MARY E. BARNEY, BY HER NEXT FRIEND MAXWELL WOODHULL, APPELLANT, v. DAVID SAUNDERS, ROGER C. WEIGTMAN, AND SAMUEL C. BARNEY.

There were two trustees of real and personal estate for the benefit of a minor. One of the trustees was also administrator de bonis non upon the estate of the father of the minor; and the other trustee was appointed guardian to the minor.

When the minor arrived at the proper age, and the accounts came to be settled, the following rules ought to have been applied.

The trustees ought not to have been charged with an amount of money, which the administrator trustee had paid himself as commission. That item was allowed by the Orphans' Court, and its correctness cannot be reviewed, collaterally, by another court.

Nor ought the trustees to have been charged with allowances made to the guardian trustee. The guardian's accounts also were cognizable by the Orphans' Court. Having power under the will to receive a portion of the income, the guardian's receipts were valid to the trustees.

The trustees were properly allowed and credited by five per cent. on the principal of the personal estate, and ten per cent. on the income.

Under the circumstances of this case, the trustees ought not to have been charged upon the principle of six months rests and compound interest.

The trustees ought to have been charged with all gains, as with those arising from usurious loans, unknown friends, or otherwise.

The trustees ought not to have been credited with the amount of a sum of money, deposited with a private banking house, and lost by its failure, so far as related to the capital of the estate, but ought to have been credited for so much of the loss as arose from the deposit of current collections of income.

THIS was an appeal from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington.

The facts in the case are stated in the opinion of the court.

It was argued by *Mr. Chilton* and *Mr. Linton*, for the appellant, and by *Mr. Lawrence* and *Mr. Bradley*, for the appellees.

The points made by the counsel for the appellant were the following.

I. That the trustees should have been charged with the thirty-five shares of Bank of Metropolis stock and the dividends accruing thereupon, alleged to have been sold in 1836 by defendant, D. Saunders, to satisfy his commission as administrator de bonis non of Edward DeKraft, he not being entitled to such commission, and not having the right to sell the bank stock without the order of the Orphans' Court.

Dorsey's Testamentary Laws of Maryland, 90, §§ 3, 4; Hill on Trustees, 381; 4 Ves. 497; Pocock *v.* Reddington, 5 Ves. 799; 2 Story's Equity, 1263; Pierson *v.* Shore, 1 Atkyns, 480; 5 Peters, 562; 5 Gill & Johns. 60–64; Gist *v.* Cockey and Fendall, 7 Har. & Johns. 135; McPherson *v.* Israel, 5 Gill & Johns. 63, 64; 12 Id. 84.

II. That the trustees should not have been credited by the

sums of money alleged to have been paid R. C. Weightman, as guardian of plaintiff in error. That the will of Edward DeKraft creating the trust did not give the trustees such power or authority, nor was the same warranted by the facts of the case. The trustees should have invested said moneys in bank or other stocks, or put the same out at interest upon good and sufficient security, as directed by the will.

Hill on Trustees, 395, 400, 402, 574; 1 Rop. on Leg. 568; Dorsey's Testamentary Laws of Maryland, 114, § 8, p. 115, § 13; Brodess v. Thompson, 2 Harris & Gill, 120; 3 Harris & Johns. 268; Hatton and Weems, 85–110.

III. That the trustees should not have been allowed and credited by 5 per cent. on the principal of the personal estate, and 10 per cent. on the income, as was done by the auditor. That they should not be allowed any commission at all, either upon the principal or income of the estate. That in any event they should not be credited by any commission upon the amount of principal never collected — upon the amount of the bank and other stocks. Winder v. Diffenderffer, 2 Bland, 207; Miller v. Beverly, Beverly v. Miller, 4 Hening & Munford, 420; Ringgold v. Ringgold, 1 Harris & Gill, 11, 109; Gwynn v. Dorsey, 4 Gill & Johns. 460; 3 Ib. 348; Harland's Account, 5 Rawle's Reports, 323.

IV. That the auditor did not charge the trustees upon the principle of six months' rest and compound interest. De Peyster v. Clarkson and others, 2 Wendell, 77; Schieffelin v. Stewart, 1 Johns. Ch. R. 620; Garniss v. Gardiner, 1 Edwards's Ch. 130; Harland's accounts, 5 Rawle's Rep. 323; 2 Story's Equity, 517–521; Tucker's Commentaries, 457; Raphael v. Boehm, 11 Ves. 92; Ringgold v. Ringgold, 1 Harris & Gill, 11; Wright v. Wright, 2 McCord, 185; Voorhees v. Stoothoff, 6 Halsted's Rep. 145; Tebbs v. Carpenter, 1 Mad. R. 305; Dunscomb v. Dunscomb, 1 Johns. Ch. Rep. 508; 5 Johns. Ch. Rep. 497.

V. That the trustees should have been charged by the auditor with all gains, as with those arising from usurious loans, unknown friends, or otherwise. 2 Story, §§ 1210, 1211, 1261; Holton v. Bern, 3 Stu. 88, (note); 1 Johns. Chancery Rep. 625; 4 Ib. 284, 308; 2 Kent's Commentaries, 230; Story on Contracts, 485; Hill on Trustees, 383; Walker v. Symonds, 3 Swans. 58.

VI. That the trustees should not have been credited by the loan to Fowler & Co. or any part thereof. Hill on Trustees, 368–378, 404; 2 Story's Equity, 509–516; Tebbs v. Carpenter, 1 Maddock's Rep. 305; 3 P. Williams, 100, (note); Ringgold v. Ringgold, 1 Harris & Gill's Rep. 12; 1 McCord's Ch. Rep. 250, 495.

VII. That the trustees, Saunders and Weightman, should have been dismissed, and others appointed in their place.

The points made by the counsel for the appellees were the following.

*First.* The court was right in not charging the trustees with the thirty-five shares of the Bank of the Metropolis, sold by Saunders, administrator de bonis non, to pay his commission.

1. Administration was necessary in order to pass the trust property to the trustees. This gave the right to commissions.

2. The maximum of ten per cent. can be exceeded.

3. The allowance to Saunders was in April 1836, and the final allowance to the administratrix, who did not settle the whole estate, was in 1846, and it should have been taken from that account.

4. The allowance of seven and a half per cent. to the administratrix enured to the benefit of the complainant, she being her only child.

5. The allowance to Saunders was made by the Orphans' Court before the money was paid over to the trustees, and is conclusive.

In addition to the authorities cited by the auditor, see Jones *v.* Stockett, 2 Bland's Ch. 416.

*Second.* The trustees were properly credited with the amount paid to R. C. Weightman, as guardian.

1. His accounts as guardian were not before the auditor for settlement and examination. The parties and their counsel were there, and the auditor certifies to the court, " the guardianship trust of Mr. Weightman has been settled, as was admitted before me by the counsel of both parties."

2. Under the will, the guardian had the right to receive the three fourths of the income.

3. The object of the trust was to provide for the maintenance and education of his daughter. If the accounts of the guardian are to be considered in evidence, they show that this was the only fund out of which these objects could have been satisfied. No charge is made in them for these objects.

4. His accounts, as guardian, are open for revision in the Orphans' Court.

*Third.* The allowance of five per cent. on the personal estate, and ten per cent. on the income, is right.

1. It is the rule in most of the States to allow commissions to trustees. Boyd *v.* Hawkins, 2 Dev. Eq. 334.

The cases on this point have been collected with care, and will be found in the Notes of American Cases — to the case of Robinson *v.* Pett, 2 White & Tudor's Equity Cases, 353 and the following.

2. The rule has been long settled in Maryland; and,

3. It has been fully adopted by the Circuit Court of the District of Columbia.

*Fourth.* The court has charged the defendants with interest, making annual rests. There is no appeal by the defendants; but if that point is open, they will insist that no interest ought to have been charged against them.

The liability of a trustee to pay interest depends upon the money being held or appropriated according to, or in violation of, the purposes of the trust. Sandford, 404; and the principle is, that he should be charged with what he did make or might lawfully have made. McNair v. Ragland, 1 Dev. Eq. 517, 524; Sparhawk v. Buel, 9 Vermont, 42, 82.

The general rule is to allow a trustee (having power to invest) a reasonable discretion, and for simple neglect to charge simple interest until the investment is made, and only for an intentional violation of duty, or a corrupt use of the money, to make rests, or, according to the circumstances, compound the interest as the measure of profits are undisclosed. 5 Johns. Ch. 517; 4 Barb. Sup. Ct. 649; 2 W. & S. 565; 1 Pick. 528, note; 10 Pick. 104; 1 Rob. Vir. 213; 5 Dana, 78, 132; 12 Ala. 355; 6 Geo. 271; 2 Dev. & Bat. 339; 4 Humph. 215; 6 Halst. 145; 1 H. & G. 80; 3 G. & J. 342.

The English rule is essentially the same.

*Fifth.* There is no exception upon which the complainant's fifth point can rest. If it is now open, the defendants rest on the view taken by the auditor.

*Sixth.* The trustees were entitled to credit for the deposit with Fowler & Co.

The facts in regard to this deposit will be found in the answers of the defendants Saunders and Weightman, in the evidence.

The substance is, that by the will the trustees were to invest the income in bank or other stocks, or good security, with power to sell the real estate and invest the proceeds in other real estate, bank, or other stocks, and if in real estate, that was to be in some of the cities north or east of the city of Washington. In 1838, the banks in the city had suspended specie payments. Their charters were about to expire, and the several laws were passed, to which reference is made.

The trustees had a discretion. They also had a right to retain a sum to meet the contingencies of the estate. One of the original loans was in part repaid, and the ordinary income was coming in. They consulted counsel. Acting under his advice, and exercising a sound discretion, they de-

posited the fund with bankers in good credit, on an agreement to allow the depositors six per cent. It was a deposit, not a loan — a deposit awaiting investment — a deposit where their own funds and those of other discreet business men was made — a deposit of funds received from accruing income of the estate in small sums, and in money not bankable, at a period of great irregularity and pressure in the money market; and a deposit where such funds were earning money instead of being idle. The auditor credited a portion only. The court allowed the whole sum.

If the trustees acted in good faith, exercised a sound discretion, kept the money, or deposited it from necessity or convenience, used ordinary care and diligence in the mode of keeping it, acted under the advice of counsel, and were actuated by a sincere desire to promote the interest of the trust estate, they are not to be charged with the loss.

They can only be charged in a case of clear negligence, perversion of the trust, or wilful default. Morley *v.* Morley, 2 Chan. Ca. 2; Knight *v.* Earl of Plymouth, 3 Atk. 480; Jones *v.* Lewis, 2 Vez. Sen. 240; 5 Ves. 144; Rowth *v.* Howell, 3 Ves. 564; Ambl. 419; Thompson *v.* Brown, 4 Johns. Ch. 628, 629; 10 Pet. 568, 569; 3 G. & J. 341; 11 G. & J. 208; 8 Gill, 403, 428–30, and cases therein cited.

Mr. Justice GRIER delivered the opinion of the court.

The complainant, Mary E. Barney, is the only daughter of Edward DeKraft, who devised all his real estate and the residue of his personal estate to respondents, Saunders and Weightman, (together with Joseph Pearson, since dead,) on the following trusts: 1st. To permit the widow to enjoy during life or widowhood certain portions of the trust estate. 2. In trust to receive the rents, interest, dividends, &c., and to pay over quarterly to his widow, until his daughter Mary arrived at the age of 18, three fourths of the said rents and profits for the support and maintenance of herself and daughter, and

3dly. To lay out and invest the residue of the said rents and profits, &c., with the annual produce thereof, from time to time in bank or other stocks or on good security.

4th. At the death of the widow, the trustees to hold the estate with its increase for the sole and separate use of the daughter; and with numerous other provisions not necessary to be stated, for the purposes of this case.

The widow of the testator refused to take under the will, and claimed her legal rights; the executors also renounced, and letters of administration, with the will annexed, were granted to the widow.

Mrs. DeKraft died in October, 1834, leaving the complainant, her only child, then about four years of age. At her death the trustees went into possession of the trust estate. Saunders, one of the trustees, took out letters of administration de bonis non to the estate of DeKraft; received the assets of the estate, which remained unconverted, and transferred them to himself and Weightman, as trustees.

In 1836, Weightman was appointed guardian of the person and property of the complainant.

Besides the real estate, consisting of four houses in the city, the personal property transferred to the trustees, in mortgages and stocks, amounted to about $17,000.

The complainant intermarried with Lieut. Barney, in 1847, and attained the age of 18, in August, 1848. In March, 1849, the bill in this case was filed, charging the trustees with divers breaches of trust, demanding their removal; an account of the trust estate, and the appointment of a receiver. The respondents filed their answer, and an account, which was referred to a master or auditor, who made report in October, 1850.

Numerous exceptions were made to this report by the complainant, which were overruled by the court below, to whose judgment this appeal is taken.

We shall notice those only which have been urged by the counsel in this court. The first is

"I. That the trustees should have been charged with the thirty-five shares of Bank of the Metropolis stock and the dividends accruing thereupon, alleged to have been sold in 1836 by defendant, D. Saunders, to satisfy his commission as administrator de bonis non of Edward DeKraft, he not being entitled to such commission, and not having the right to sell the bank stock without the order of the Orphans' Court."

The acts of D. Saunders as administrator de bonis non of DeKraft are not the subject of review in this suit. He settled his account as administrator in the Orphans' Court, and the allowances made there cannot be reviewed collaterally in another court, in a suit in which a different trust is involved. The appellant may possibly have good reason to complain that her estate has been almost devoured by the accumulation of per centages it has been compelled to pay to the numerous hands through which it has passed, but must have her remedy, if any, by demanding a review of the accounts in the court which has, in the exercise of its jurisdiction, allowed them. We are of opinion, therefore, that this exception has not been sustained.

II. The second exception is to the allowance of a credit to the trustees for sums paid to Weightman, as guardian of the complainant.

Larney v. Saunders et al.

What has been said in reference to the first exception will apply to this. Weightman's accounts, as guardian, were not before the auditor for settlement; and the guardian being entitled under the will to receive a portion (not to exceed three fourths) of the income, and apply it, if necessary, to the maintenance and education of his ward, his receipts would be good and valid vouchers to the trustees.

The guardian's account is open for revision in the Orphans' Court, on the petition of the complainant.

While on this subject, we would take the opportunity to remark, on the impropriety of appointing persons to trusts, however high their personal character may be, who are allowed to pay from their right hand into their left; as where A, as administrator, has to settle an account with A as trustee; and B, as trustee, to deal with B as guardian. To instance the present case : Saunders, the trustee, whose duty it was to scrutinize the accounts of the administrator de bonis non, from whom they receive the trust estate, is himself appointed administrator, and thus left without a check, or any one to call him to strict account except his co-trustee, for many years, and until the ward comes of age. Weightman, the other trustee, is appointed guardian, being the only person who for many years could call to account the trustees for any negligence, mismanagement, or fraud. Thus the estate of the infant is left at the mercy of chance, the solvency or insolvency, the negligence or fraud of the trustees for sixteen years or more, with no one to call them to account. That the persons appointed in this particular case were highly honorable men, is true; but the same rule should be applied in all cases. If the estate of the infant in this case has been so fortunate as to escape, it is an accident or exception, which cannot affect the propriety of a general rule. Experience has shown that the estates of orphans are more frequently wasted and lost by the carelessness of good-natured and honorable men who undertake to act as trustees, than by the fraud and cupidity of men of a different character.

Such appointments, we are aware, are generally made on *ex parte* applications, and without objection. But in all cases the court, exercising this important power, should remember that orphans are under their special protection, and should make no appointments of guardians of their estates without due inquiry and proper information.

III. The third exception is,

" That the trustees should not have been allowed and credited by five per cent. on the principal of the personal estate, and ten per cent. on the income, as was done by the auditor; that they should not be allowed any commission at all, either upon the

principal or income of the estate; that in any event they should not be credited by any commission upon the amount of principal never collected, upon the amount of bank and other stocks."

In England, courts of equity adhere to the principle which has its origin in the Roman law, " that a trustee shall not profit by his trust," and therefore that a trustee shall have no allowance for his care and trouble. A different rule prevails generally, if not universally, in this country. Here it is considered just and reasonable that a trustee should receive a fair compensation for his services; and in most cases it is guaged by a certain per centage on the amount of the estate. The allowances made by the auditor in this case are, we believe, such as are customary in similar cases, in Maryland and this district, where the trustee has performed his duties with honor and integrity. But on principles of policy as well as morality, and in order to insure a faithful and honest execution of a trust, as far as practicable, it would be inexpedient to allow a trustee who has acted dishonestly or fraudulently the same compensation with him who has acted uprightly in all respects. And there may be cases where negligence and want of care may amount to a want of good faith in the execution of the trust as little deserving of compensation as absolute fraud. If trustees, having a large estate to invest and accumulate for the benefit of an infant, for a number of years, will keep no books of account, make out no annual or other account of their trust estate; if they risk the trust funds in their own speculations; lend them to their relations without security; and in other ways show a reckless disregard of the duties which they have assumed, they can have but small claim on a court of equity for compensation in any shape or to any amount.

But while the court agree in these principles, they are equally divided in opinion as to the application of them to the present case. The decision of the auditor and the court below on this exception must therefore stand affirmed.

IV. The fourth exception is, "that the auditor did not charge the trustees upon the principle of six months' rest and compound interest."

On the subject of compounding interest on trustees, there is, and indeed could not well be, any uniform rule which could justly apply to all cases. When a trust to invest has been grossly and wilfully neglected; where the funds have been used by the trustees in their own business, or profits made of which they give no account, interest is compounded as a punishment, or as a measure of damage for undisclosed profits and in place of them. For mere neglect to invest, simple interest only is generally imposed. Six months' rests have been made only

where the amounts received were large, and such as could be easily and at all times invested.

The auditor in this case has made yearly rests. In calculating the interest on the loans, he says, "it has been charged upon the days on which it became due, first applied to the disbursements, and the balance struck at the end of each year and interest calculated on such balances while unemployed, but such interest has not been carried into the receipts of the succeeding year, but into a separate column, and the aggregate of interest for all the years on these balances is added to the principal at the foot of the account. In this I have followed the rule in Grernbary's Case, 1 Wash. R. 246, and Leigh, 348."

In this way he alleges, that "compound interest is in effect given on the loans, and simple interest upon the annual balances while they were uninvested, allowing a month after the termination of each rest to make the investment."

As the sums received by the trustees in this case were small, and as three fourths of the annual income were liable to be called for by the guardian for the use of his ward, we are of opinion the auditor has stated the account in this respect with fairness and discretion. The fourth exception is therefore not sustained.

V. The fifth exception is, "that the trustees should have been charged by the auditor with all gains, as with those arising from usurious loans, unknown friends, or otherwise."

It is a well-settled principle of equity, that wherever a trustee, or one standing in a fiduciary character, deals with the trust estate for his own personal profit, he shall account to the *cestui que trust* for all the gain which he has made. If he uses the trust money in speculations, dangerous though profitable, the risk will be his own, but the profit will inure to the *cestui que trust*. Such a rule, though rigid, is necessary to prevent malversation. See Docker *v.* Somes, 2 My. & K. 655.

The money used in purchase of the house, having been settled by the transfer of the same to the complainant, the subject-matter of the present exception has been confined to the usurious interest received. It amounts only to the sum of sixty-six dollars. The auditor and the court erred in not charging that sum to the accountants. They cannot be allowed to aver that the profits made on the trust funds should be put in their own pockets, because they were unlawful gains, for fear that the conscience of the *cestui que trust* should be defiled by a participation in them. To indulge trustees in such an obliquity of conscience, would be holding out immunity for misconduct and an inducement to speculate with the trust funds, and put them in peril.

This exception is therefore sustained.

VI. The sixth exception is, "that the trustees should not have been credited by the loan to Fowler & Co. or any part thereof."

This is the most important point in the case.

The facts affecting it are reported by the auditor, as follows:

" C. S. Fowler & Co. were brokers in this city, dealing in exchange, loans, and all the usual business of such an establishment; and, in addition, issued notes which formed a part of the circulating medium of the city. They also received deposits and allowed interest at six per cent., permitting the depositor to check on the amount to his credit at pleasure. The establishment was in good credit in 1841, and up to the failure, in the early part of 1842, many of the business men of the city deposited their funds with them. On the 22d of May, 1841, Mr. Saunders placed with Fowler & Co. $1,181 under the following agreement, entered in a pass or check book:

" CITY OF WASHINGTON, 22 May, 1841.

" We hereby agree with D. Saunders, acting trustee of Edw. DeKraft's estate, to receive his deposits and to allow him six per cent. interest thereon, he to check at will.

C. S. FOWLER & Co."

And an account was opened in said pass-book, headed thus:

" Dr.— C. S. Fowler & Co., in account with D. Saunders, acting trustee of Edw. DeKraft's estate — Cr." Other sums were afterwards added, and on the 3d of February, 1842, when the last was made, they amounted to $5,277.38, and the checks to $2,306.69; to the 1st of December, 1841, the checks amounted to $1,312, and the deposits to $3,133.88, leaving $1,825.83 undrawn in the hands of Fowler & Co. The sums received from Cooper, and left with Fowler & Co., amounted to $1,876, and the other sums placed with them prior to the 1st of December, 1841, to $1,261.88, within $50.12 of the amount checked out up to this time.

The first sum paid in ($1,181) was a payment made on the same 22d of May, by Cooper, on account of the principal and interest due on his mortgage. The $1,700 paid on the 17th of August was also a part of Cooper's debt. The $800 paid in on the 3d of February, was a part of Jones's mortgage debt. The residue is supposed to have been the current collections of the trustees from rents, dividends, &c.

" On the 14th March, 1842, Fowler & Co. failed. No interest had been calculated or paid. The account was balanced after the failure, when $2,970.96, were found standing to the credit of Saunders, as acting trustee. It is a total loss. The

credit of Fowler & Co. was good up to the time of their failure."

Before placing the trust fund with Fowler & Co. the trustees took the opinion of counsel, whether they could safely do so. It was in evidence, also, that at any time within the last ten years two or three thousand dollars could have been safely loaned on mortgage of real estate in this city.

By the decision of the auditor the trustees were charged with those portions of the Fowler deposit which were composed of the original capital paid in by Cooper before December, and the residue of that loss, composed of their current annual collections and of Jones's payment in February, on account of the original debt, was allowed as a credit.

The court below overruled this decision of the auditor, and ordered the charge against the trustees of $2,521.53, on this account, to be stricken out. We are of opinion, that the court below erred in making this correction of the auditor's report.

The reasons given by the auditor, including the peculiar facts of the case and the principles of law applicable to them, are well stated in his report, and we fully concur in their correctness. It will be only necessary to state them.

"The sums placed by D. Saunders, as acting trustee, with Fowler & Co., were of two descriptions — original capital, and current collections. Cooper's and Jones's payments were of the former description. 1. As to those, the general rule seems to be that a trustee, though compensated for his services, is bound to take no greater care of the trust funds than a prudent man would of his own. 2 Story's Eq. § 1268. But at the same time if the line of his duty is prescribed he must, according to Mr. Lewin, (p. 413,) "strictly pursue it, without swerving to the right hand or the left;" and if he fail to do so, and keep funds, which ought to be invested, longer on deposit than necessary, and loss occur, he must bear the loss. Whatever doubt may be entertained as to the duty of the trustees in this case, to invest the surplus annual income beyond the fourth, it is thought there can be no doubt as to their obligation to reinvest the original loans and debts of the testator, when paid in. If this be so, then were these sums paid by Cooper and Jones to the trustees, and by them placed with Fowler & Co., a loan or deposit with them. They were repayable with interest at pleasure.

" It looks very much like a loan, payable with interest, on demand. And if a loan, clearly the trustees are liable, because made without security of any description. The directions of the will are to invest on some security " in bank or other stocks, mortgages or other good security," words which exclude personal security. But the trustees, in their answers, deny it was a loan,

46 *

and state that these sums were deposits made to await a fit opportunity of investment.

"Assuming them to be such, the proof is that mortgages could be obtained at any time in this city. But trustees shall be allowed a reasonable time to select investments. What is a reasonable time? Five months have been held to be an unreasonable time to keep money on deposit. Cooper's first payment was left with Fowler & Co. nearly ten months before the failure, from May, 1841 to March, 1842, and his second, seven months, from August to March. Jones's was left February 3, 1842 — not quite six weeks before the failure. Cooper's would seem to have been on deposit waiting for investment too long, and therefore I have charged the trustees with those sums, deducting the arrear of interest due from him, and deeming three months not to be an unreasonable time to be allowed for selecting investments, have charged interest from that time. By that rule, Jones's payment of original capital would not be chargeable to the trustees."

We concur also in the decision of the auditor as to his refusal to charge the trustees with the balance arising from current collections and the payment of Jones, made within six weeks of the failure. The funds were deposited where the accountants deposited their own private funds. The trust funds were not mingled with their own. Other prudent and discreet men made deposits with the same bankers. The advice of counsel was taken. There was no reason to suspect the solvency of the bankers. On the whole, we do not think the trustees have acted with such want of prudence or discretion as to render them liable for the loss of this portion of the funds.

VII. As the whole trust estate has been delivered over to the *cestui que trust*, and as the trustees hold only the bare legal estate for the purpose of protecting the complainant in the enjoyment of it from the debts and control of her husband, the exception taken to the action of the court below in refusing to remove them, becomes of no importance, and has not been insisted on.

The decree of the court below is therefore reversed, as to the fifth and sixth exceptions above stated — and affirmed as to the residue. And the record remitted to the court below, with directions to amend the decree in conformity with this decision.

## Order.

This cause came on to be heard on the transcript of the record, from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington, and was argued by counsel. On consideration whereof, it is now

here ordered, adjudged, and decreed by this court; that the decree of the said Circuit Court in this cause be, and the same is hereby reversed with costs, and that this cause be, and the same is hereby remanded to the said Circuit Court for further proceedings to be had therein in conformity to the opinion of this court.