EAST RIDGELAWN CEMETERY, PLAINTIFF, v. WALTER G. WINNE AND TOBY FURST, SUBSTITUTED TRUSTEES, ETC., ET AL., DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided February 5, 1951.

*Messrs. Carey, Pforr, Knoeppel & Ziff,* attorneys for plaintiff.

*Mr. Theodore D. Parsons,* Attorney General, attorney *pro se.*

*Mr. Isadore Glauberman,* attorney for Walter G. Winne and Toby Furst.

*Messrs. Bilder, Bilder & Kaufman,* attorneys for Adam Frank, trustee.

*Messrs. Kessler & Kessler,* attorneys for H. Jerome Sisselman.

*Mr. William L. Rae,* attorney for Vivian D. Bell, *et al.*

*Mr. Benedict Krieger,* attorney for Kay Holding Company.

GRIMSHAW, J. S. C. The plaintiff, East Ridgelawn Cemetery, has been engaged in litigation since 1910. In the present action it hopes to have determined all open questions and thus

put an end to litigation. This is a pious hope in which we all join.

Plaintiff seeks to have adjudged the question as to whether it must pay for the cemetery lands which it now holds, and, if so, to whom payment shall be made and in what amount. It also seeks to have established the priority as between the amount owed to creditors of the cemetery and the amount owed to the holders of land purchase certificates.

The history of the cemetery is so well known as a result of the prolonged litigation that no useful purpose would be served by a detailed statement of the facts. A brief resume will suffice.

In 1905 the defendant Adam Frank conceived the idea of establishing a cemetery in Acquackanonk Township, now the City of Clifton. With two associates, Pond and Tait, Frank set about the business of securing options on suitable property. The options covered some 270 acres. They were taken in the name of Herbert Gruber, a dummy for Frank.

Since the statute, *R. S.* 8:2–1, limited the area of any one cemetery to 125 acres, it became necessary for Frank and his associates to form two cemeteries. This they did, calling one East Ridgelawn and the other West Ridgelawn.

East Ridgelawn Cemetery was organized on October 3, 1905. The trustees were selected by Frank. A franchise was granted to the cemetery by the township committee on December 12, 1905.

On December 28, 1905, Frank and his associates offered to deed to the two cemeteries the 270 acres of land in return for 13,500 shares or certificates of interest in the money to be obtained by the cemeteries from the sale of plots for burial purposes. Frank's offer was accepted by both cemeteries. In order to carry out the scheme, Frank arranged for Gruber to convey the property to the Passaic Trust and Safe Deposit Company, later known as the Passaic National Bank & Trust Company. The deed for the lands now held by the plaintiff, a tract of some 121 acres, was dated December 21, 1906. On the same date the bank executed a declaration of trust which is in part as follows:

"FIRST. That on a request in writing of the said Herbert B. Gruber, his administrator or executor, it will convey the said land and premises above described to the East Ridgelawn Cemetery, a body corporate of the State of New Jersey, carrying on business in the Township of Acquackanonk in the County of Passaic and State of New Jersey, upon the following conditions:

(1) That the said land is to be used by it for cemetery purposes.

(2) That the said East Ridgelawn Cemetery shall pay as consideration therefor such amount as it may receive from time to time as the proceeds of sale of said lots or plots in the following manner, viz.:

The said East Ridgelawn Cemtery shall first deduct from the proceeds of sale of said lots or plots such sum as the said East Ridgelawn Cemetery shall deem necessary to set aside for the perpetual care fund, which sum, however, shall not be less than six cents per square foot of land sold for burial purposes. Said perpetual care fund shall be paid over by the East Ridgelawn Cemetery to the Passaic Trust and Safe Deposit Company, and shall be invested together with income therefrom by the said Passaic Trust and Safe Deposit Company.

One-half of the balance of the proceeds of the sale of said lots and plots shall be paid by the East Ridgelawn Cemetery to the Passaic Trust and Safe Deposit Company, and out of the remainder of the proceeds of said sales, the said East Ridgelawn Cemetery shall pay to the said Passaic Trust and Safe Deposit Company as the further consideration for such conveyances, all moneys remaining after the deduction of the expenses of preserving, improving and embellishing the said cemetery grounds, and avenues and roads leading thereto, and for buildings thereon, and the debts contracted for said cemetery and for salaries, wages and expenses incurred by the said cemetery in carrying on its business, and such an amount in addition thereto as the said cemetery may deem proper to retain from time to time for the future embellishing of said cemetery. It however being understood that the way in which said money shall be expended shall be entirely under the control of said Cemetery Company, the Trust Company being in no manner liable therefore. The proceeds of said sale herein referred to shall be paid over to the said Trust Company, its successors or assigns monthly.

(3) That the price for the sub-lots or plots in said cemetery shall be fixed by the cemetery.

(4) That said proceeds of sale of said sub-lots or plots is hereby appropriated and is to be divided by said cemetery into Thirteen thousand five hundred (13,500) shares to represent which the said East Ridgelawn Cemetery shall issue a certificate or certificates to the said Trust Company in such form as shall be hereinafter recited.

(5) That the said certificates, when issued and delivered as herein provided, shall be negotiable and assignable by the holder thereof, his executors, administrators, successors or assigns, and on the surrender up or cancellation of any certificates first issued under this agreement, new certificates in place thereof shall be issued by the

said East Ridgelawn Cemetery to the person lawfully entitled to receive the same, and the same shall be endorsed as hereinafter provided by the said Trust Company, its successors or assigns."

A declaration of trust was also executed covering the property conveyed to West Ridgelawn. The two declarations of trust are identical.

On January 3, 1907, the bank conveyed to East Ridgelawn Cemetery the 121 acres of land which had been deeded to it by Gruber. The conveyance was made subject to the trust agreement. Gruber received the 13,500 shares or certificates as provided for in the trust agreement and immediately turned them over to Frank. Gruber also disclaimed any beneficial interest in the certificates. The distribution of the certificates does not concern us. That question was settled in the case of *Bittles v. West Ridgelawn Cemetery Co.*, 94 *N. J. Eq.* 808 (*E. & A.* 1923).

It was not long before the trust agreement became the subject of an attack in the courts. In 1910, Vice-Chancellor Stevens, in sustaining a demurrer to a bill for specific performance filed by East Ridgelawn, held the cemetery to be without power to issue the certificates provided for in the trust agreement. At the same time, the vice-chancellor indicated his disapproval of the provision for a dividend fund. *East Ridgelawn Cemetery Co. v. Frank*, 77 *N. J. Eq.* 36 (*Ch.* 1910). Then came the case of *Atlas Fence Co. v. West Ridgelawn Cemetery*, 119 *N. J. Eq.* 552 (*E. & A.* 1935), in which the appellate court affirmed a determination by then Vice-Chancellor Bigelow that: (1) the direct beneficiary of the perpetual care fund was the cemetery association; (2) the provision in the trust agreement for a dividend fund was void, and (3) that the trustee was entitled to receive the fair value of the estate conveyed to the cemetery as of the time of the conveyance, with interest, but without priority over other creditors. And, finally, in *Passaic National Bank & Trust Co. v. East Ridgelawn Cemetery*, 137 *N. J. Eq.* 603 (*E. & A.* 1945), same case, 139 *N. J. Eq.* 488 (*E. & A.* 1946), the former Court of Errors and Appeals denounced the provision in the trust agreement for a dividend fund as being in contra-

vention of the essential policy of the statute and, therefore, void. The cemetery then filed the present complaint.

The plaintiff has never paid for the land which was conveyed to it by the trustee. That it must do so is not now open to question. *Atlas Fence Co. v. West Ridgelawn Cemetery, supra; Attorney-General v. Linden Cemetery Ass'n.,* 85 *N. J. Eq.* 501 (*E. & A.* 1915), same case, 89 *N. J. Eq.* 192 (*E. & A.* 1918). The fair value of the estate conveyed is the equity in the lands plus a reasonable allowance for the services of the promoter and their value to the cemetery. *Attorney-General v. Linden Cemetery Ass'n., supra.* And, in the latter case, which is strikingly similar to the present one, the court decided that a reasonable allowance for the services of the promoter would be 10% of the value of the land for cemetery purposes as of the time of the original conveyance. That determination will be followed in this case.

On the question of land values, the plaintiff produced a tax expert who testified that a cemetery franchise hurt rather than helped the value of land. This is so completely at variance with the adjudicated cases and with common experience that it must be disregarded. Plaintiff also offered two experts who testified to the value of the property as farm land. Since we are concerned with the value of the land for cemetery purposes this testimony was not helpful. One of defendants' experts fixed the value of the land for cemetery purposes, in 1907, at the sum of $660,000. Another placed the figure at $651,300. If we consider the latter sum as representing the value of the land for cemetery purposes, then 10% of that amount, or $65,130, would be a reasonable allowance for the services of the promoter.

The purchase price for the land was $73,380. The reasonable allowance for the services of the promoter is $65,130. The sum of these two figures, or $138,510, is the allowable purchase price. To this amount must be added the sum of $41,005, being the amount realized by the cemetery from the sale of land purchase shares, which constitutes a liability the cemetery must recognize. *Bliss v. Linden Cemetery Ass'n.,* 83 *N. J. Eq.* 494 (*Ch.* 1914). The total liability

of the plaintiff is $179,515. From this amount will be deducted mortgage payments in the sum of $32,810.17 made by the cemetery and the sum of $16,691.98 heretofore paid to the trustee by the cemetery. After the indicated deductions are made, the net liability of the plaintiff is the sum of $130,012.85.

This obligation is payable to the defendant trustees as the successors of the Passaic National Bank & Trust Company. They are not entitled to priority of payment over the other creditors of the plaintiff. They are, however, entitled to interest. *Atlas Fence Co. v. West Ridgelawn Cemetery, supra.*

In its brief, plaintiff argues that the claim of the trustees is barred by the Statute of Limitations. It asks the court to fix the amount of the liability and then argues that the claim is no longer payable. The argument ignores the fact that as late as 1946 the plaintiff recognized its obligation although questioning the amount. No authorities are cited in support of plaintiff's position. In my opinion it is without merit.

When it comes to the question of the payment of the plaintiff's obligations, there would appear to be no reason why the method outlined in the trust agreement should not be followed.

Judgment in accordance with the above views.