Ruth P. MACK and Lucy P. Elias, Executrices of the Estate of Clara B. Prince, deceased, Plaintiffs,

and

Samuel F. Slaff et al., Plaintiffs-Intervenors,

v.

PASSAIC NATIONAL BANK AND TRUST COMPANY, Defendant.

Civ. A. No. 2241.

United States District Court
D. New Jersey.

Dec. 19, 1957.

722

Walter G. Winne, Hackensack, N. J., sole surviving substituted trustee.

Isadore Glauberman, Jersey City, N. J., for substituted trustees.

Furst, Furst & Feldman, George Furst, Newark, N. J., for Estate of Toby Furst, deceased, formerly substituted trustee and for Samuel F. Slaff, intervenor.

Samuel F. Slaff, Passaic, N. J., intervenor, pro se.

Benedict Krieger, Passaic, N. J., for Kay Holding Co., intervenor.

Kaufman, Kaufman & Kaufman, Newark, N. J., Samuel Kaufman, Newark, N. J., for Adam Frank, intervenor.

Kessler & Kessler, Samuel I. Kessler, Newark, N. J., for H. Jerome Sisselman, intervenor.

Carey, Pforr, Knoeppel & Ziff, Robert Carey and Herbert Ziff, Jersey City, N. J., attorneys for East Ridgelawn Cemetery and Phoebe A. Rae, widow and personal representative of William L. Rae, deceased, formerly attorney for certificate holders and plot owners.

Winfield Bonynge, New York City, pro se, and attorney for Clarabel B. Mulholland and Grace B. Taylor, certificate holders.

Robert Bonynge, New York City, pro se, and attorney for Louise B. Millar, Lucy B. Combs and Howard W. Bonynge, certificate holders.

Grover C. Richman, Atty. Gen. of New Jersey, David Landau, Deputy Atty. Gen. of New Jersey.

Osborne, Cornish & Scheck, Harry V. Osborne, Jr., Newark, N. J., for certain creditors and certificate holders.

Ralph W. Chandless, Hackensack, N. J., for Ernest Kurzrok, former intervenor.

WORTENDYKE, District Judge.

For some of the early history and background of the present case reference is made to this Court's opinions reported, respectively, in 134 F.Supp. 281 and 150 F.Supp. 221. The Court was more recently confronted with the application of Walter G. Winne, as sole surviving substituted trustee for certificate holders of East Ridgelawn Cemetery, for allowance of his first intermediate account, which shows a balance in his hands on October 9, 1957, of $438,740.19, plus uncomputed interest accrued since June 28, 1957, upon a portion of said balance carried by accountant in his "time deposit account" with Hackensack Trust Company, of Hackensack, New Jersey. Upon hearing on return of due notice this account was allowed.

In his verified petition in support of the foregoing account, the trustee dis-closes that, pursuant to this Court's order of November 19, 1956, there have been filed with him certificates, or affidavits as to lost certificates, together with proofs of claim, for an aggregate of 13,003 shares, and proof of a temporary certificate for 5 shares, in the proceeds of the judgment recovered by the substituted trustees against East Ridgelawn Cemetery in the Superior Court of New Jersey. Trustee's petition further represents that there are outstanding 557 permanent shares, as well as 59 temporary shares in said judgment, for which no claims have been filed with him. Thus, although only 13,500 shares were authorized to be issued, there appear to be an aggregate of 13,624 shares outstanding. Trustee represents that the cost of litigation to adjudicate the validity of the 124 shares excess over the authorized total would exceed the aggregate of pro rata payments to be made on each share. However, Clarabel B. Mulholland, claiming to own 438 shares, Winfield Bonynge, claiming to own 218 shares, Grace B. Taylor, claiming to own 99 shares, and East Ridgelawn Cemetery, claiming to own 2,770 shares "of the East and West Ridgelawn Cemeteries" oppose the recommendation of the accounting surviving trustee that the holders of the foregoing excess of 124 shares be included as distributees of the fund in trustee's hands because, as these objectors assert, 115 of these 124 shares "represent an erroneous duplicate issue of shares" in respective amounts of 100 to Robert Simpson and 15 to Edward T. Moore. These objections relate to share certificates respectively numbered 153, 720, 722, 723, 726, 122, 617 and 704. The amount per share hereinafter determined to be presently distributable by the accounting surviving trustee which would otherwise be payable upon the 124 excess shares shall be withheld by the trustee pending the further order of this Court after hearing, upon notice, respecting title to the shares represented by all questioned certificates.

The aforesaid judgment in the Superior Court of New Jersey, as modified in

accordance with the mandate of the Supreme Court of New Jersey, amounted, on July 7, 1953, to $102,115.38, plus interest thereon at 3% per annum from January 3, 1907. In satisfaction of that judgment, and as authorized by the order of this Court of October 4, 1954, the Cemetery conveyed to the presently accounting surviving trustee certain vacant lands of the Cemetery. These lands were thereafter sold by said trustee for $451,-000, and this sale was confirmed by this Court's order of September 24, 1956.

The terms of the agreement between the trustee and the Cemetery respecting the satisfaction of the said judgment against the Cemetery included the provision that the trustee should pay to the Cemetery, out of the proceeds of his subsequent sale of the lands which the Cemetery agreed to convey to him, the sum of $10,000 for surrender by the Cemetery of certificates for 2,643 shares owned by the Cemetery. The trustee reports that the Cemetery has filed proof of claim for 2,770 shares (127 shares more than stated in the agreement). Upon the recommendation of the trustee, and in the absence of objection, the Cemetery will be allowed to participate, as a holder of 127 shares, in the funds to be distributed by the trustee, and also to receive from the trustee payment of the $10,000 as provided in the agreement aforesaid. Trustee is also authorized to pay to Cemetery, as provided in the same agreement, the sum of $6,871.58, for costs and counsel fees, out of the proceeds of sale of the lands described in the agreement.

Trustee reports that a question has arisen respecting his liability, if any, to the United States Government for taxes, by reason of the difference between the amount realized by him upon the sale of lands conveyed to him by the Cemetery in satisfaction of his judgment against the Cemetery and the amount due upon the judgment on the date of said conveyance. In order that he may have in hand ample funds with which to pay any such tax liability, if and when established, trustee seeks authorization to

pay at this time, to each shareholder, a dividend of $10 per share. I believe payment of $12 per share is warranted at this time, and the trustee will be directed to proceed accordingly.

The accounting surviving trustee, the estate of his deceased co-trustee, Toby Furst, and counsel for various parties now seek allowances to be paid out of the fund in the accountant's hands. This Court, sitting in equity in this case, has jurisdiction to make suitable allowances in a case of this nature. The general principles controlling the Court in exercising such jurisdiction are stated in Hobbs v. McLean, 1886, 117 U.S. 567, at page 582, 6 S.Ct. 870, at page 877, 29 L.Ed. 940:

"When many persons have a common interest in a trust property or fund, and one of them, for the benefit of all and at his own cost and expense, brings a suit for its preservation or administration, the court of equity in which the suit is brought will order that the plaintiff be reimbursed his outlay from the property of the trust, or by proportional contribution from those who accept the benefits of his efforts. * * * But where one brings adversary proceedings to take the possession of trust property from those entitled to it, in order that he may distribute it to those who claim adversely, and fails in his purpose, it has never been held, in any case brought to our notice, that such person had any right to demand reimbursement of his expenses out of the trust fund, or contribution from those whose property he sought to misappropriate."

We proceed to analyze the pending applications in the light of the foregoing statement of principles.

### The Substituted Trustees.

The present suit was instituted by the executrices of a deceased holder of a certificate or certificates for 266 shares, issued pursuant to the trust agreement of December 21, 1906, to which the

predecessor of the original defendant, Passaic National Bank and Trust Company, as trustee, was a party. In their complaint plaintiffs prayed that the trustee (bank) account, that it be removed as trustee, and that a substituted trustee be appointed for the benefit of the holders of certificates of shares under the original declarations of trust. Other certificate holders were, from time to time, by court order, permitted to intervene as plaintiffs. This Court's order of May 29, 1944 permitted the trustee (bank) to resign, and appointed Walter G. Winne, Toby Furst and another, as substituted trustees under the declarations of trust referred to in the complaint "to the extent necessary for the collection and preservation of any and all assets and income due to the Trustees or shareholders under such agreements, and with full power and authority to liquidate the assets of the trust estate." This appointment was made permanent as to Winne and Furst, by order of this Court of November 27, 1944. No allowance appears to have been made by this Court to the resigning trustee (bank) or to its counsel. A decree in an accounting suit brought by the trustee (bank) in the former Court of Chancery of New Jersey against the Cemetery had adjudicated that the latter owed $205,973.63 to the dividend fund contemplated by the terms of the original Declaration of Trust. This decree was the trust *res* to which the substituted trustees succeeded upon their qualification. On December 6, 1944 this Court designated Isadore Glauberman to act as counsel for the substituted trustees, and he has continued to act in that capacity for them and for the survivor of them until the present time. Toby Furst died November 20, 1952.

The existence of the present fund of over $438,740 in the hands of the surviving substituted trustee unquestionably results from the joint efforts of the substituted trustees, of their counsel, Mr. Glauberman, and of Messrs. Samuel I. Kessler and Samuel Kaufman, respectively counsel for certain intervening certificate holders. For these contribu-

tive and fruitful efforts each of them is justly entitled to pecuniary compensation. The creation of the fund resulted from multifarious, protracted and arduous litigation, supplemented by creative planning, effective negotiation and special knowledge of real estate values and sales possibilities. Substituted trustee Winne embodies in his petition for allowances for his services and for reimbursement of estimated disbursements, verified October 16, 1957, a general narrative statement of the nature of his services which extended from his temporary appointment (with Toby Furst and Benedict Krieger) on May 29, 1944 to the present time (a period of approximately 13 years), of which Toby Furst served with Mr. Winne as co-trustee until the former's death in 1952. In addition to conferring and cooperating with their attorney, Mr. Glauberman, these trustees attended court upon various phases of litigation instituted and prosecuted by their counsel, and Mr. Winne participated in numerous conferences which ultimately resulted in the agreement with the Cemetery to convey the lands to the trustee in satisfaction of his judgment against it. He also personally conducted the two sales of this property which ultimately yielded a net price of $445,468.90. Between the sales the surviving trustee was compelled to negotiate further with the Cemetery respecting the establishment of the location of a sewer easement through its retained property which contributed to an increase in the value of the land which it had conveyed to the trustee. In this country, " * * * a trustee should receive a fair compensation for his services; and in most cases it is gauged by a certain percentage on the amount of the estate." Barney v. Saunders, 1853, 16 How. 535, 541, 57 U.S. 535, 541, 14 L.Ed. 1047. Recognition of this principle is found in N.J.S. 3A:10–1, N.J.S.A., the provisions of which, however, do not govern the present application. I find that the substituted trustees rendered valuable services contributory to the creation and enhancement of the fund

now constituting the trust corpus. I will allow Mr. Winne, *ad interim*, for his services as substituted trustee, $20,000, and the estate of Toby Furst, deceased, for his services as substituted co-trustee, $5,000, and additionally, to Mr. Winne, the sum of $1,515.45 as reimbursement for his disbursements.

### The Attorney for Substituted Trustees.

■ Mr. Glauberman, as attorney for the substituted trustees, has performed his duties in that capacity faithfully, effectively and efficiently. The development of the judgment of $102,115.38, plus interest, into the present fund of $438,740.19, through sale of the land conveyed in satisfaction of the judgment, was achieved by his efforts in combination with those of Messrs. Kessler and Kaufman, respectively attorneys for certain intervening certificate holders. His services to the sole surviving trustee will continue to be required for some time in the future. At the present time he will be allowed, *ad interim*, $27,500 on account of his services, and reimbursement for his disbursements which amount to $2,956.54.

### The Certificate Holders and Their Attorneys.

■ Although the captioned action was instituted by the executrices of a deceased certificate holder against the successor of the original trustee (bank), no application has been made by or in behalf of these plaintiffs for an allowance on account of services rendered by their attorneys. However, after the institution of this action other certificate holders were permitted to intervene, and these intervenors now ask this Court to allow them, out of the fund in the hands of the surviving substituted trustee, an aggregate of $44,500.

As has already been indicated, intervenors Sisselman and Frank, through their respective attorneys, Samuel I. Kessler and Samuel Kaufman, contributed substantially and effectively, in collaboration with the surviving substituted trustee and his attorney, to the creation of the fund out of which allowances are now sought. All of the certificate holders have benefited from the services of these two attorneys, as well as from the services of the attorney for the substituted trustee.

In the language of Judge Prettyman, speaking for the United States Court of Appeals for the District of Columbia, in Walsh v. National Savings & Trust Company, 1957, 247 F.2d 781, at page 782:

> "An attorney who creates, increases, preserves or protects a trust fund, with an accompanying benefit to all who are entitled to participate in the trust, is entitled to receive his fee from the corpus of the trust."

The decision cited rests primarily upon the principles expressed by Mr. Justice Frankfurter in Sprague v. Ticonic Bank, 1939, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184, in which the Supreme Court considered the right of a litigant to an allowance of counsel fees and expenses over and above the regular taxable costs in a case where the success of the litigant has established, although incidentally through the principle of *stare decisis*, like rights in others, not parties to the suit, in a fund upon which the litigant has imposed a lien. In reaching the conclusion that such allowance should be made in the case under consideration, Mr. Justice Frankfurter reviews the history of the equity jurisdiction of the Federal Courts, reminds us of its source in the English Court of Chancery, and states (307 U.S. at page 165, 59 S.Ct. at page 779):

> "The sources bearing on eighteenth-century English practice—reports and manuals—uniformly support the power not only to give a fixed allowance for the various steps in a suit, what are known as costs 'between party and party,' but also as much of the entire expenses of the litigation of one of the parties as fair justice to the other party will permit, technically known as costs 'as between solicitor and client.'"

The learned Justice continues, 307 U.S. at page 166, 59 S.Ct. at page 780:

> "Sometimes the complainant avowedly sues for the common interest while in others his litigation results in a fund for a group though he did not profess to be their representative. The present case presents a variant of the latter situation. In her main suit the petitioner neither avowed herself to be the representative of a class nor did she automatically establish a fund in which others could participate. But in view of the consequences of *stare decisis,* the petitioner by establishing her claim necessarily established the claims of fourteen other trusts pertaining to the same bonds."

The case at bar presents yet another factual variant, the net result of which, however, has been the creation and enhancement of a fund in which other certificate holders similarly situated have become entitled to benefit.

In the exercise of my equitable discretion I conclude that substantial allowances should be made to intervenors Sisselman and Frank, as costs "as between solicitor and client." In the case of Mr. Kessler, attorney for Mr. Sisselman, his contribution to the creation of the present fund was somewhat more substantial than that of Mr. Kaufman, attorney for Mr. Frank. I refer, in this connection, more particularly to his having pledged $50,000 of his own money as a guarantee that if the bid of $271,000 for the land conveyed by the Cemetery to the surviving substituted trustee were rejected, the property on resale would bring at least $290,000. It was this guarantee which justified the Court in refusing to confirm the first sale and in directing the readvertisement and resale of the property which ultimately resulted in the bid of $452,000. Reference to this particular contribution on the part of Mr. Kessler is not to be deemed a minimization of the value of the other contributive services which he rendered in collaboration with Messrs. Glauberman (attorney for the sole surviving substituted trustee) and

Kaufman. I shall, therefore, award to Mr. Sisselman, for Mr. Kessler, a final allowance of $15,000, plus his unreimbursed actual disbursements.

I shall award intervenor Frank, for Mr. Kaufman, a final allowance of $10,000, plus his unreimbursed actual disbursements.

The intervenor, Samuel Slaff, in his capacity as attorney *pro se,* asks for a final allowance of $3,500, and Furst, Furst & Feldman, Esqs., as attorneys for Samuel Slaff, seek a final allowance in a similar amount. Intervenor Kay Holding Company seeks a final allowance of $2,500, for its attorney, Benedict Krieger. I find no justifiable basis for making any allowance to these intervenors.

### Other Claimants for Allowances.

In addition to the foregoing, application is made by Ralph W. Chandless, Esq., as attorney for a former intervening plot owner, Ernest Kurzrok for a final allowance of $5,000 and reimbursement of disbursements in the amount of $150. Harry V. Osborne, Jr., Esq., as attorney for certain plot owners and creditors of East Ridgelawn Cemetery, whose application to intervene in this case was denied, seeks an allowance of $2,400 for his services to those unsuccessful applicants. Each of the last two mentioned applications for allowances must be denied. With respect to that of Kurzrok, this Court has already determined that his status as an alleged lot owner of West Ridgelawn Cemetery afforded him no interest in the trust of East Ridgelawn Cemetery. Moreover, his activities in this long-pending litigation were entirely uncontributive to the result ultimately achieved for the beneficiaries of the judgment recovered against East Ridgelawn Cemetery.

### The Accountants for the Substituted Trustees.

By order of this Court made on December 18, 1944, Puder & Puder, certified public accountants, with offices in the City of Newark, New Jersey, were designated to render accounting services

to Walter G. Winne and Toby Furst as substituted trustees in the place and stead of the Passaic National Bank and Trust Company. These accountants now seek an allowance for their services in the sum of $5,000. According to their verified petition, the services for which this allowance is sought consisted generally in an examination of the books and records of East Ridgelawn Cemetery and the rendition of accounting advice and guidance to the two said substituted trustees, to the survivor of them, and to their counsel, extending over a period from the date of their appointment to the present. The services for which these accountants now seek allowance are exclusive of those rendered in connection with the Perpetual Care Fund of the Cemetery which covered a period of fourteen years. These accountants are presently in the course of advising the surviving substituted trustee, and his attorney, respecting the tax status of the funds presently in the trustee's hands and in that connection their representative advised the Court respecting the amount to be reserved to meet any tax liability. These accountants will be awarded an *ad interim* allowance for their services to date, exclusive of the services rendered in connection with the Perpetual Care Fund, in the amount of $3,500.

### The Attorneys for East Ridgelawn Cemetery.

■ Although conceding that East Ridgelawn Cemetery has been an adversary of the defendant trustees in the litigation which ultimately resulted in the trustees' recovery of a judgment against the Cemetery, the attorneys for the Cemetery apparently rest their claim for a present allowance in the amount of $3,500 upon their asserted collaboration with the surviving substituted trustee, in reaching an agreement for the conveyance of land by the Cemetery to the trustee in satisfaction of the judgment, in contributing to the enhancement of the value of the land by working out, with the surviving substituted trustee, a specific location for the sewer easement

herein previously referred to. The Court is cognizant of the fact that the determination of the location of this easement was partly responsible for the ability of the surviving substituted trustee, on resale, to secure the substantial increase in the price received. Therefore, the Cemetery will be allowed $1,500 on account of its obligation to its attorneys for their services in its behalf.

### Claim of Estate of William L. Rae, Deceased.

■ The Court has been furnished with an affidavit of Phoebe A. Rae, the widow and personal representative of William L. Rae, who died on April 25, 1953, from which it appears that said decedent in his lifetime "actively participated as the attorney for the holders of certificates of indebtedness and owners of lots and plots of East Ridgelawn Cemetery in litigation affecting said cemetery commencing in or about 1945." The same affidavit sets forth that in one action in which the decedent participated, he was awarded a counsel fee of $1,000 for his services "to be paid out of any fund that might come into the hands of Walter Winne as Substituted Trustee, etc." Accordingly, the deponent seeks an allowance for the Estate of said decedent in the amount of $5,000 in addition to the sum of $1,000 awarded by the New Jersey Superior Court. In East Ridgelawn Cemetery v. Winne, 1953, 11 N.J. 459, 94 A.2d 833, decedent argued the cause before the New Jersey Supreme Court in behalf of certain cross-appellants and the Court modified, but otherwise affirmed, a judgment of the Appellate Division of the New Jersey Superior Court in the same case (19 N.J. Super. 413, 88 A.2d 635), which in part affirmed and in part reversed a judgment of the Chancery Division of the same Court (11 N.J.Super. 555, 78 A.2d 623). The latter report embodies a comprehensive historical narration of the preceding litigation involving the Cemetery. Although it appears that decedent participated as counsel in the litigation in all three of the Courts whose opinions are above cited, I am unable to discern,

from reading the opinions, any substantial contribution made by decedent through the parties whom he represented to the result finally achieved by the surviving substituted trustee. Upon the presentation of a certified copy of the order or judgment of the New Jersey Court awarding to decedent the allowance of $1,000 mentioned in his widow's affidavit, I shall direct the payment thereof out of the fund presently in the hands of the surviving substituted trustee, but I can find no justification for making any further allowance to this applicant upon the record presently before me.

Objections to Trustee's Account and to Applications for Allowances.

Written objections have been filed to the account of the surviving substituted trustee and to the various applications for allowances hereinabove mentioned. Further objections to the claimed allowances have been made in letter form by one of the attorneys for East Ridgelawn Cemetery. The Court has carefully considered all of these objections.

Among the objections made by and in behalf of Clarabel B. Mulholland, Winfield Bonynge, Grace B. Taylor and East Ridgelawn Cemetery, is that directed to the trustee's contemplated payment of a dividend upon shares claimed to be owned by the Estate of Harry E. Hunt, deceased, as set forth in Schedule B of the trustee's account. These objectors assert that no proof of claim has been filed justifying any such payment to the named Estate. The trustee will be directed to make no dividend payment upon any shares without securing due proof of the right of the claimant to receive such payment.

The same objectors also assert that pursuant to this Court's order of August 9, 1956, Samuel I. Kessler, received $1,766.94 and Samuel Kaufman received $3,370.43. Reference to the mentioned order indicates that these payments were directed as reimbursement of disbursements made by the designated payees, among whom was also included Isadore

Glauberman, Esq., therein designated to receive a reimbursement of his disbursements in the amount of $140.05. Any reimbursement of disbursements to be authorized in accordance with this opinion shall be deemed inclusive of the amounts stated in this Court's order of August 9, 1956, unless the latter amounts have already been paid.

An order may be presented in conformity with the views hereinabove expressed.