EAST RIDGELAWN CEMETERY COMPANY

*v.*

ADAM FRANK et al.

[Decided April 8th, 1910.]

1. *1 Gen. Stat. 1895 p. 349* authorized incorporation of rural cemetery associations to hold one hundred and thirty-five acres of land, and cast the management thereof on trustees elected by the lot owners, and exempted the land from taxation, and provided that the lots from time of interment should be inalienable, and allowed the holding of property in trust to apply income to improvements, and the investment of money accruing from sale of lots for the purpose of improvement of the land, and also provided that at least one-half the .proceeds of all sales of lots should be first appropriated to the payment of the purchase-money of the land acquired, until the whole purchase-money should be paid, and the residue used to improve the grounds, and after the land is paid for future earnings from the sale of lots shall go to the improvement and preservation of the cemetery. By supplement of March 14th, 1879 (*1 Gen. Stat. p. 351 § 16*), it is provided that any creditor, in addition to his right to vote by virtue of owning lots, shall be entitled to one vote for every $400 worth at par value of bonds, "stock," or other duly authorized evidence of debt he may hold against such association. A cemetery association under the act bought land jointly with another association, each taking the limit of land allowed, and gave to the purchaser certificates of shares in the proceeds of the sale of the lots as consideration.—*Held*, that the statute did not permit the giving of stock which at all times would be a lien on the proceeds, even after the lots were paid for; and hence the certificate issued by the association conferred no legal right, since it did not oblige the company to pay a definite price for the land, and disregarded the provisions obliging the company to appropriate one-half of the proceeds to the improvement of the property.

2. *Held*, also, that though the word "stock" was used in the supplement, it would be considered an inadvertence, and not sufficient to change the scheme of the statute.

3. Neither would the scheme of the statute permit two companies, each holding the limit of land, jointly to buy land, and jointly to give certificates for shares for the purchase price.

4. In a suit for specific performance of a contract to convey land, purchased by a cemetery association, and paid for by the issuance of certificates of stock, the association cannot urge that it is entitled to relief,

without passing on the question of the validity of the certificate, when the bill on its face shows that the certificate was issued in disregard of the scheme of *Gen. Stat. p. 349*, under which it was organized, and was the only consideration for the purchase.

*Mr. John R. Hardin,* for the demurrant.

*Mr. Michael Dunn, contra.*

STEVENS, V. C.

This bill is filed for the specific enforcement of an agreement to convey land and to pay off certain mortgages.

The complainant was incorporated September 30th, 1905, under the act to authorize the incorporation of rural cemetery associations. *Gen. Stat. p. 349.* After its incorporation it made an agreement (whether in writing or otherwise is not stated) with the defendant, Frank and one Pond, who subsequently conveyed all his interest to Frank, that they should convey, or cause to be conveyed, to complainant, free and clear of all encumbrance, a tract of land in Acquackanonk township, containing one hundred and twenty-five acres. This tract, with the exception of two parcels of land containing, respectively, one and two acres, they did in fact cause to be conveyed, as agreed. They also agreed to convey such other land, not exceeding ten acres, as might be necessary for the purpose of straightening out the cemetery lands.

The bill alleges that it was also agreed that they would convey to the West Ridgelawn Cemetery Company, the complainant being known as the East Ridgelawn Cemetery Company, one hundred and thirty-five acres, "making," so the bill states, "two hundred and seventy acres in all," and would (I quote from the bill)

"accept and receive in payment and as a consideration price for said conveyance a certain interest in the proceeds of the sale of the said lands, after deducting certain charges and expenses and which interest in said proceeds of sale was agreed to be fixed at fifty shares per acre for the land conveyed to each cemetery, which amounted to 13,500 shares as the aggregate amount."

The bill then proceeds to state as follows:

"And the said interest was to be evidenced by one or more certificates signed by your orator, and the said West Ridgelawn Cemetery (a body corporate) representing in the aggregate thirteen thousand five hundred shares and the same were to be issued and deliverd to the said Adam Frank  *   *   *   and that in pursuance of said agreement to purchase said lands your orator and the said West Ridgelawn Cemetery did issue and deliver to the said Adam Frank the said certificates evidencing such interest in the proceeds of sales to be made by your orator and the said West Ridgelawn Cemetery of the lands so conveyed and to be conveyed to them under said agreement."

The bill further alleges that to better effectuate the performance of the agreement and to indemnify complainant against the payment of the mortgages and to secure the conveyance of the remaining lands agreed to be conveyed, Frank assigned to the Passaic Trust and Safe Deposit Company certain of said certificates representing two thousand five hundred equal undivided shares in the said proceeds of sale of the lands of complainant and the said West Ridgelawn cemetery, in trust for those objects; that he has failed to pay off three mortgages on which there are now due $5,000, $3,750 and $5,500, respectively, and that he has failed to convey the remaining land agreed to be conveyed.

There are other allegations, but the above are the material ones. The complainant insists that it has a lien in equity on all shares issued "outside of the two thousand shares deposited with the trust company," and asks for an injunction restraining Frank from disposing of any of the shares and for a decree directing Frank to pay the mortgages and to convey the lands agreed to be conveyed and for which he has already received the full amount of shares to which he was entitled, not only for the land actually conveyed, but also for that which he agreed to convey and did not convey. The prayer is, further, that on Frank's failure to pay and convey, a receiver may be appointed to take Frank's shares and he be required "to make abatement of said consideration of fifty shares of each acre of land which he fails to convey."

The bill is notable for its omissions. It does not state within what time Frank was to pay off the mortgages or otherwise perform his agreement. It does not state whether the agreement was in writing, and, of course, does not append any copy of it. It

does not set forth the terms of the written trust on which the trust company holds the two thousand shares; it does not show why that trust cannot be enforced by the trust company, and it does not allege that the trust company has ever been called upon to enforce it.

It is, moreover, vague and uncertain on a subject of vital importance. It alleges that payment for the land was made by issuing certificates signed by the two companies representing "a certain interest in the proceeds of the sale of the said land" (without telling us what interest) "after deducting certain charges and expenses," without telling us what charges and expenses. It merely says that said interest was fixed at fifty shares per acre and amounted to thirteen thousand five hundred shares as the aggregate amount. No copy of this novel certificate is appended, and we can only gather its terms from the above description.

This much is clear. The certificate is the joint certificate of both companies, and purports to give to the vendor thirteen thousand five hundred shares in the proceeds of the sale of the land as the consideration for twice one hundred and thirty-five acres, or fifty shares per acre, the maximum amount which a cemetery company may hold being one hundred and thirty-five acres. Is such a scheme authorized or permitted by the Cemetery act? "A cemetery for the burial of the dead," says Mr. Justice Gray, in *Close* v. *Glenwood Cemetery, 107 U. S. 474,* "if not a strictly charitable use, is, in some aspects, a public and pious use." Our courts have taken a similar view (*Newark* v. *Stockton 44 N. J. Eq. (17 Stew.) 180; Toppin* v. *Moriarty, 59 N. J. Eq. (14 Dick.) 115*), and so has the legislature. The Cemetery act gives the management of the cemetery to trustees elected by the lot owners. It exempts cemetery lands from taxation and assessment. *Rosedale Cemetery Association* v. *Linden, 73 N. J. Law (44 Vr.) 421.* It provides that lots, from the time of interment, shall, in general, be inalienable. It confers a limited power of eminent domain. It allows the association to hold property, real and personal, upon trust to apply the income to the improvement and embellishment of the grounds. It authorizes the investment

of money accruing from the sale of lots for the purpose of maintenance and improvement (section 67), and it expressly directs as follows (section 19) :

> "One-half at least of the proceeds of all sales of lots and plots shall be first appropriated to the payment of the purchase-money of the lands acquired by the association until the whole purchase-money shall be paid ; and the residue thereof to preserving, improving and embellishing the said cemetery grounds and the avenues and roads leading thereto and to defray the incidental expenses of the cemetery establishment; and after the payment of the purchase-money and the debts contracted therefor and for surveying and laying out the ground, the proceeds of all future sales shall be applied to the improvement, embellishment and preservation of such cemetery and for incidental expenses and to no other purpose or object so long as such embellishment is incomplete."

The only intimation that cemetery companies may issue stock is to be found in the supplement of March 14th, 1879 (*Gen. Stat. p. 351* § *16*), referred to in the opinion of Vice-Chancellor Pitney, in *Ransom* v. *Brinkerhoff, 56 N. J. Eq.* (*11 Dick.*) *149.* It is there provided that "every creditor, in addition to his right to vote by virtue of his owning lots, shall be entitled to one vote for every $400 worth at par value of bonds, stock or other duly authorized evidences of debt he or she may own or hold against such association." As to this, Vice-Chancellor Pitney said: "The existence of stock or shareholders is not contemplated by the act nor consistent with the legislative scheme.  *  *  * By implication, the language recognizes the right of the association to make use of the machinery of certificates of stock to manifest a debt owing by it; but clearly it left the owner a mere creditor, and no more; for it is as a creditor only that he is authorized to vote for the trustees."

It is quite plain that the insertion of the word "stock" in the supplement was a mere inadvertence, and that, if this provision be still in force (see supplement of March 17th, 1893, *Gen. Stat. p. 357* §§ *46, 47*), the so-called stock can be nothing more than an evidence that a specific sum of money is due and owing by the corporation to the creditor.

The question then is, how does the certificate issued by the two companies harmonize with the legislative scheme as thus outlined?

By the scheme under review no purchase price is fixed. The certificate holder receives either the whole or a part of the proceeds of the sale of the burial lots up to the time that the last lot is sold. He thus gets the benefit of the sums expended for improvement and embellishment, whether those sums be derived from donations or from the proceeds of the sales of lots. He makes a profit out of their exemption from taxation and levy, and even from the possible exercise of the power of eminent domain. The statute contemplates the purchase of the land for a definite price; but under the scheme in question there is no price, in the ordinary sense. The grantor either appropriates the whole of the proceeds of the sale of the lots, "after deducting certain charges and expenses," or at least a part, and if a part we are not told how much. On the face of the bill there is nothing to indicate that the certificate is consistent with the provisions of the statute, and much to indicate that it is not. The certificate appears to be open to the following objections:

*First.* It is the joint certificate of two companies that have no statutory power to enter into a joint undertaking that makes each liable for the moneys received by the other.

*Second.* The contract expressed in the certificate appears, as far as we can gather from its contents, to disregard entirely that provision of the law which obliges the company to appropriate one-half of the proceeds of the sale of its lots for the preservation and embellishment of the cemetery property and for incidental expenses.

*Third.* The certificate does not oblige the companies to pay a definite price for their lands, but, like the ordinary stock certificate, appears to give an indefinite interest in earnings. The certificate holder becomes virtually a partner, sharing in the gains, but not liable for the losses. It is not likely that the legislature intended to confer immunity from taxation and levy, coupled with the power of eminent domain, in order that some individual might make an increased profit out of those extraordinary powers and immunities. At all events, there is no warrant in the statute for such a certificate, and it is out of harmony with the general scheme of the act.

It is argued that the court may give relief without passing upon the question of the validity of the certificate. But the relief asked is specific performance of an agreement to convey land and to pay off mortgages; the consideration, and the sole consideration therefor, being the certificate in question. If, on the face of the bill, such a certificate appears to confer no legal right, I do not see how it can be successfully contended that the court can decree for complainant. It only decrees a specific performance where it finds that a valuable consideration has been given. Here the consideration is a stipulation for an interest in the proceeds of the sale of lots; a stipulation that the companies have no right to give.

I think the demurrer should be sustained in this as well as in the similar case of the East Ridgelawn company.