221 F.2d 441
 Ruth P. MACK and Lucy P. Elias, Executrices of the Estate of Clara B. Prince, Deceased, Plaintiffs-Respondents,
Samuel F. Slaff, Kay Holding Co., H. Jerome Sisselman, Adam Frank, Plaintiffs-Intervenors-Respondents,
v.
PASSAIC NATIONAL BANK & TRUST CO., Defendant-Respondent,
Ernest Kurzrok, Plaintiff-Intervenor-Appellant.
 No. 11481.
 United States Court of Appeals Third Circuit.
 Argued March 11, 1955.
 Decided April 27, 1955.
 
 Ralph W. Chandless, Hackensack, N. J., for appellant.
 Isadore Glauberman, Jersey City, N. J., for surviving substituted trustee.
 Kessler & Kessler, Newark, N. J., for H. Jerome Sisselman, plaintiff-intervenor-respondent, on the brief.
 Ernest Kurzrok, Passaic, N. J., plaintiff-intervenor-appellant, pro se, on the brief.
 Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.
 McLAUGHLIN, Circuit Judge.
 
 
 1
 In 1907, Passaic Trust & Safe Deposit Co., of Passaic, New Jersey, the predecessor of Passaic National Bank & Trust Co., conveyed approximately 250 acres of land to two newly incorporated New Jersey cemetery associations, East Ridgelawn Cemetery and West Ridgelawn Cemetery.[1] The land thus conveyed was to be used solely for cemetery purposes. The arrangement for paying for the land was as follows: As the cemetery plots were sold the cemeteries were to pay to the Trust Company (1) an amount not less than 6¢ per square foot which would be set aside and administered by the Trust Company as a Perpetual Care Fund; and (2) one-half of the balance of the sale proceeds plus whatever remained of the other half after the operating expenses of the cemeteries were deducted. The second amount was to be set aside and administered by the Trust Company in a so-called "Dividend Fund." The two cemeteries jointly were to issue 13,500 certificates of interest to the Trust Company which in turn was to sell them to the general public, and the holders of these certificates were to be entitled to trust interest from the dividend fund being administered by the Trust Company.
 
 
 2
 This plan was proceeded with. Years passed, and the cemeteries fell far behind in their payments. Despite a decree entered by the New Jersey Court of Chancery against East Ridgelawn Cemetery in 1933 in the sum of $205,973.63, neither the original nor the successor trustee collected said amount from the cemetery. Consequently in 1942, Mack and Elias, plaintiffs below, brought suit as holders of Certificates of Interest for the appointment of substitute trustees and for an accounting.
 
 
 3
 Ernest Kurzrok, appellant here, a lot holder in West Ridgelawn Cemetery, but not a certificate holder,[2] was permitted to intervene by order of this court on the theory that any fund which the certificate holders would be entitled to share in might be subject to paramount equitable liens which could be asserted by the lot holders of either cemetery for the perpetual care funds. See Mack v. Passaic Nat. Bank & Trust Co., 3 Cir., 1945, 150 F.2d 474. See also Mack v. Passaic Nat. Bank & Trust Co., 3 Cir., 1946, 154 F.2d 907.
 
 
 4
 On April 19, 1946, Kurzrok filed an "amended complaint" which read in part as follows:
 
 
 5
 "20-A. That the defendant, Passaic National Bank and Trust Company, has failed to comply with paragraph `2' of the Deed of Trust dated December 21, 1906, between the said defendant's predecessor, Passaic Trust and Safe Deposit Company, and Herbert B. Gruber, in that it has failed to collect and set aside in a special fund known as the Perpetual Care Fund, the sum of six cents per square foot, for each and every square foot of the 94 acres of the West Ridgelawn Cemetery, or approximately the sum of $245,678.40, which sum is now due and owing to the Perpetual Care Fund of the West Ridgelawn Cemetery.
 
 
 6
 * * * * * *
 
 
 7
 "Wherefore, Plaintiff-Intervenor, Ernest Kurzrok, demands that:
 
 
 8
 * * * * * *
 
 
 9
 "2. That the lot owners of the West Ridgelawn Cemetery shall have a prior claim to any and all funds derived from the East and West Ridgelawn Cemeteries, which accrued under the Declaration of Trust, to the benefit of the shareholders, to satisfy the deficiency now existing in the Perpetual Care Fund for the benefit of the lot owners of the West Ridgelawn Cemetery; and that the 13,500 certificates of stock of the East and West Ridgelawn Cemeteries shall be a lien for the benefit of the lot owners of the West Ridgelawn Cemetery, until such time as the rightful sum due the Perpetual Care Fund shall have been paid into the said fund."
 
 
 10
 On May 8, 1946, the Passaic National Bank & Trust Company filed its answer in which it said:
 
 
 11
 "This defendant denies that it has failed to comply with paragraph 2 of the Deed of Trust dated December 21, 1906 between The Passaic Trust and Safe Deposit Company and Herbert B. Gruber, and further denies that there is due and owing the Perpetual Care Fund of the West Ridgelawn Cemetery from this defendant the sum of $245,678.40 or any other sum."
 
 
 12
 Walter G. Winne and Toby Furst, now deceased, were later substituted as permanent trustees. They instituted proceedings to collect the moneys allegedly due from East Ridgelawn Cemetery. After much litigation, the New Jersey Supreme Court decided that the original method of payment set up in the Deed of Trust was illegal. Since cemetery associations were in the nature of charitable trusts, the state Supreme Court reasoned that any scheme to make extraordinary profits through a dividend fund was contrary to the policy of the controlling legislation. The New Jersey Supreme Court did hold, however, that the cemetery owed the substituted trustees an amount representing the fair market value of the land at the time of the conveyance. The amount owed was there set at $102,115.59 plus interest.
 
 
 13
 Winne, the surviving substituted trustee, was barred by statute from moving against the cemetery for execution of the judgment. In view of the protracted nature of the remedy of sequestration, he entered instead into negotiations with the cemetery, and an agreement was reached whereby the cemetery was to convey 34.389 acres of its unimproved land to the trustee in full satisfaction of the judgment. As a part of the agreement, the deed was to provide that the land being transferred could be used only for non-cemetery purposes. The agreement was in all respects subject to the approval of the New Jersey Superior Court which had entered the judgment against the cemetery, and was also "executed on condition that the costs and allowances heretofore made by the Court to the Cemetery, for its costs and counsel in the sum of $6,871.58, shall be a first charge against the Trustee on the moneys realized by him in the sale of the aforesaid lands * * *." Paragraph 10 of the same agreement provided:
 
 
 14
 "The Trustee shall, as a charge against the proceeds from the resale of the lands, and prior to distribution to participants in the judgment, pay $1,200.00 to Fred W. Gardner in payment of his bill for preparation of survey."
 
 
 15
 And finally Paragraph 7 made the agreement subject "to the payment of $10,000.00 to the Cemetery by the Trustee out of the moneys realized by him in the sale of the aforesaid lands, upon the surrender for cancellation of * * * 2,643 certificates of interest now owned by the Cemetery."
 
 
 16
 On September 20, 1954 the surviving substituted trustee petitioned the District Court for an order authorizing him to enter into this agreement. On the same day the District Judge ordered all certificate holders and all other parties in interest, including intervenor Kurzrok, to appear on October 4, 1954 and show cause why such authorization should not be granted.
 
 
 17
 On September 30th Kurzrok served and filed a five page affidavit in opposition to the proposed authorization. Kurzrok's grounds for opposition included among others the fact that the proposed agreement violated the covenants in the original conveyance restricting the use of all the lands for cemetery purposes and requiring the Perpetual Care Fund to receive the first moneys on any land sold by the cemetery.
 
 
 18
 On October 4, Kurzrok was represented by newly-retained counsel. The hearing on the order to show cause consisted of a discussion among the various counsel plus the testimony of a real estate broker who testified as to the value of the land involved in the proposed conveyance.
 
 
 19
 On the same day, October 4, the District Judge issued an order authorizing the trustee to enter into the agreement and, subject to the approval of the New Jersey Superior Court, to carry out its provisions. The State Court approval was subsequently obtained.
 
 
 20
 In the interval between 1946 when Kurzrok first was permitted to intervene and 1954 when the above order was made, the issues raised by Kurzrok's amended complaint were never litigated. After opposing the initial continuance in 1946 Kurzrok attempted without success to have the case restored to the 1947, the 1948, and the 1951 trial calendars. Each time his motion was denied[3] and the matter held in abeyance pending final determination of the proceedings in the state courts against the cemetery.
 
 
 21
 In 1953, the cause was finally restored to the active calendar and disposal was then made of various motions. In February, 1954, Kurzrok petitioned the District Court for the appointment of a new trustee in place of Winne, for an order directing Winne to pay over "such sums as may be adjudicated to be due to the Perpetual Care Fund", for an order preventing the trustee from liquidating the trust estate, and for the setting of a trial date of the issues set forth.
 
 
 22
 Thereafter Winne filed an answer to Kurzrok's new petition in which he claimed as an "affirmative defense" that:
 
 
 23
 "None of the moneys or assets so derived or to be derived from East Ridgelawn Cemetery are chargeable with any expenses arising in connection with the perpetual care of plots of West Ridgelawn Cemetery."
 
 
 24
 In September, 1954, Winne served notice of an intention to move for severance of the claim asserted by Kurzrok or in the alternative for a separate trial. Both Kurzrok's motion to set a trial date and Winne's motion for severance were called by the Clerk on October 4, 1954 along with Winne's motion to authorize him to enter into the agreement with the cemetery. Because Kurzrok's counsel, Mr. Chandless, had only come into the case seventy-two hours previously, a continuance for two weeks was asked for and received with respect to the first two motions. The third, however, proceeded to hearing as above indicated,[4] and the District Judge issued the order authorizing Winne to enter into the specified agreement.
 
 
 25
 We are met at the outset with the contention made on behalf of Winne[5] that the order of October 4, 1954 is not a final appealable order. He contends that the order does not affect "any diminution or depletion of the trust res." In his view, "The only thing which the order under appeal does is that it gives the approval of the Court below to an agreement or settlement whereby the substituted trustee may proceed to obtain in liquid form the value of a hitherto frozen trust asset, viz., the state court judgment in favor of the trust against East Ridgelawn Cemetery."
 
 
 26
 The facts, however, do not support this characterization. The proposed order was referred to at a hearing below as "a motion to approve a compromise", and such it was. The agreement recognized the total indebtedness of the cemetery to the trustee, including interest from the date of the conveyance, as being approximately $285,000. The trustee's own witness estimated the value of the land to be transferred at $7,500 an acre, or something less than $258,000 for the acreage involved.[6]
 
 
 27
 In his original "amended complaint" Kurzrok claimed $245,678.40 as the amount previously due the Perpetual Care Fund from the trustee. He now claims an additional $89,879.09, the amount representing the 6¢ per square foot due the Perpetual Care Fund[7] from the transfer of the 34.389 acres from the cemetery to Winne.
 
 
 28
 The compromise agreement prejudices Kurzrok's rights further. It guarantees to East Ridgelawn "a first charge against the Trustee on the moneys realized by him in the sale of the aforesaid lands" in the amount of $6,871.58 for costs and counsel fees incurred by it in the state court proceedings and another charge of $10,000 as payment to the cemetery for its cancellation of certain certificates of interest owned by it. And finally it places on any money realized by the trustee a third charge of $1200 which is to be paid to the surveyor.
 
 
 29
 An event which occurred after the District Court's order demonstrates again how Kurzrok's rights can be prejudiced by the authorization. The order of the New Jersey Superior Court approving the compromise agreement directs East Ridgelawn in satisfaction of the indebtedness to convey to the trustee all its right, title and interest to the 34.389 acres "free and clear of any payment to the perpetual care fund and of the claims of owners of lots and plots * * * to participate in the proceeds from the resale of said lands * * *."
 
 
 30
 If we assume, as we must for the purpose of deciding this question, that Kurzrok's claim to a first lien of approximately $335,000 for the Perpetual Care Fund would eventually be upheld by the District Court, it is clear that his rights have been seriously prejudiced. If the state court order, which the trustee helped obtain pursuant to the agreement, is valid, Kurzrok can have no lien at all on any part of the $258,000 which may be realized on resale of the 34.389 acres. If the state court order is not binding on Kurzrok, the agreement itself establishes "a first charge" for East Ridgelawn's counsel fees. In its position as a large certificate holder, East Ridgelawn is also granted by the agreement $10,000 of the moneys to be realized on resale, presumably even if Kurzrok subsequently establishes the Fund's priority over other certificate holders. Finally, as the result of the compromise and the additional charges set up in the agreement, according to the Kurzrok figures there will not be enough money to pay the total amount owing the Perpetual Care Fund though Kurzrok should establish the Fund's right to priority.
 
 
 31
 Since the trust res is being diminished and prior liens are being created to the substantial prejudice of claimant Kurzrok, we hold that the order of October 4, 1954 is final and appealable. See Fahey v. Calverley, 9 Cir., 1953, 208 F.2d 197, certiorari denied 1954, Mallonee, Bucklin, and Fergus v. Fahey, 347 U.S. 955, 74 S.Ct. 680, 98 L.Ed. 1100; Kasishke v. Baker, 10 Cir., 1944, 144 F.2d 384, certiorari denied 1945, 325 U.S. 856, 65 S.Ct. 1185, 89 L.Ed. 1976; Rector v. United States, 8 Cir., 1927, 20 F.2d 845; In re Farmers' Loan & Trust Co., 1888, 129 U.S. 206, 9 S.Ct. 265, 32 L.Ed. 656.
 
 
 32
 From what has been said, it is apparent that we are in no position at this time to adjudicate the merits of the controversy. The nub of that controversy is whether the certificate holders or the Perpetual Care Fund has priority over moneys and property received and collected by the trustee. That issue has never been tried on its merits. No evidence has ever been taken. No witnesses have ever been called.
 
 
 33
 Under all the circumstances and particularly because the order appealed from authorized the trustee to enter into an agreement which gives one large certificate holder, i. e. East Ridgelawn itself, $10,000 of the funds which would be ultimately received, plus the fact that the trustee pursuant to that order has obtained a state court decree which purports to wipe out completely the claims of the Perpetual Care Fund to most of the trustee's assets,[8] we must reverse the order of October 4, 1954 and remand the proceedings for prompt disposal of the merits of intervenor Kurzrok's claims. Whatever other funds the trustee now has or obtains, including any funds he may receive from East Ridgelawn by using the statutory remedy of sequestration or otherwise, will be kept intact pending adjudication of those claims.
 
 
 
 Notes:
 
 
 [1]
 It was necessary to create two corporations because the governing statute restricted cemeteries to 125 acres
 
 
 [2]
 His claim that 10 shares had been endorsed to him was not noted on the trustee's records until after a court order in 1953
 
 
 [3]
 One Kurzrok appealed such denial to this circuit. His appeal was dismissed with costs assessed against him
 
 
 [4]
 Chandless, representing Kurzrok, did remarkably well under the circumstances. At one point, the following occurred:
 "Mr. Chandless: Now, I also understand there has never been any disposition of the complaint filed by the intervenor, my client, in relation to perpetual care so that the question is still open.
 "Mr. Kessler: [representing certificate holders]: That is correct.
 "Mr. Glauberman: [representing Winne]: That is correct.
 "Mr. Chandless: If there be perpetual care, if the cemetery wants to give something in the form of a compromise that would not be our concern, but if there not be sufficient perpetual care, then, of course, we become an interested party and that is the reason I asked the question."
 
 
 [5]
 Winne was joined in opposing this appeal by H. Jerome Sisselman, a certificate holder who was permitted to intervene below
 
 
 [6]
 The last report of Winne, dated June 30, 1954, indicates that he has collected only $64,295.46 from other sources
 
 
 [7]
 Our use of the term in the singular is not meant to prejudice final determination of whether one or two separate funds were created for the two cemeteries
 
 
 [8]
 Kurzrok's other assertion that the District Court order violates the covenant in the original deed restricting the land to cemetery purposes has no merit. That is a matter solely between Kurzrok and East Ridgelawn Cemetery since it is East Ridgelawn and not the trustee that may or may not be violating that covenant. The District Court never had jurisdiction over East Ridgelawn