Ruth P. MACK and Lucy P. Elias, Executrices of the Estate of Clara B. Prince, deceased, Plaintiffs,

and

Samuel F. Slaff et al., Plaintiff-Intervenors,

v.

PASSAIC NATIONAL BANK & TRUST COMPANY, Defendant.

Civ. A. No. 2241.

United States District Court
D. New Jersey.

Sept. 26, 1955.

As Amended Sept. 27, 1955, and Oct. 17, 1955.

Isadore Glauberman, Jersey City, for plaintiffs, and for Walter G. Winne, surviving substituted trustee.

Kessler & Kessler, Newark, N. J., by Samuel Kessler, Newark, N. J., for H. Jerome Sisselman, intervenor.

Bilder, Bilder & Kaufman, Newark, N. J., by Samuel Kaufman, Newark, N. J., for Adam Frank, etc., et al., intervenors.

Samuel F. Slaff, Passaic, N. J., plaintiff-intervenor, pro se.

Furst, Furst & Feldman, Newark, N. J., by George Furst, Newark, N. J., for Kay Holding Company, Inc., et al., intervenors.

Harry Dowret, petitioner for intervention, pro se.

Corbin & Corbin, Passaic, N. J., by Allan A. Maki, Passaic, N. J., for defendant.

WORTENDYKE, District Judge.

This case comes before the Court upon Mandate of the United States Court of Appeals for the Third Circuit, dated May 17, 1955, 221 F.2d 441, for prompt

disposal of the merits of intervenor Kurzrok's claims, and also upon the alleged petition of Harry Dowret, an alleged plot owner in West Ridgelawn Cemetery; for leave to intervene, as a plaintiff, for the purpose of asserting claim to or an interest in the perpetual care fund of West Ridgelawn Cemetery. The so-called petition of Harry Dowret, as filed, and the notice of his motion for leave to intervene, were neither signed nor verified; nor was the draft of affidavit of service of copies of the petition and notice of motion signed or sworn to.

By consent order of July 25, 1955, former plaintiff-intervenor, Ernest Kurzrok, was permitted to withdraw from the case, and Samuel F. Slaff was substituted in his place and stead as a plaintiff-intervenor therein.

### Findings of Fact.

From the evidence submitted upon the hearing on Mandate and Petition to Intervene aforesaid, the Court finds as follows:

1. On October 3, 1905 there was filed in the office of the Clerk of the County of Passaic, New Jersey, two Certificates of Incorporation, each dated September 30, 1905; one Certificate evidencing the incorporation of East Ridgelawn Cemetery and the other the incorporation of West Ridgelawn Cemetery; both pursuant to an enabling Statute of the State of New Jersey.

2. By deed dated December 21, 1906 and recorded in the office of the Register of Passaic County, New Jersey, in Book P-18 of Deeds, at page 641 (Exhibit E-R-4 of Sept. 13, 1955), Herbert B. Gruber conveyed in fee to Passaic Trust and Safe Deposit Co., a New Jersey corporation, certain tracts of land in the Township of Acquackanonk, Passaic County, New Jersey, aggregating somewhat in excess of 120 acres.

3. By written Declaration of Trust dated December 21, 1906 (Exhibit E-R-5 of Sept. 13, 1955) recorded in the Passaic County Register's Office in Book P-18 of Deeds at page 646, The Passaic Trust and Safe Deposit Company, after reciting the aforesaid deed to said trustor from Gruber (Exhibit E-R-4 of Sept. 13, 1955) acknowledged that said Trust Company held the premises described in said Gruber deed upon the following trusts:

"First: That on a request in writing of the said Herbert B. Gruber his administrator or executor it will convey the said land and premises above described to the East Ridgelawn Cemetery a body corporate of the State of New Jersey carrying on business in the Township of Acquackanonk in the County of Passaic and State of New Jersey, upon the following conditions:

"(1) That the said land is to be used by it for Cemetery purposes.

"(2) That the said East Ridgelawn Cemetery shall pay as consideration therefor such amount as it may receive from time to time as the proceeds of sale of said lots or plots in the following manner, viz.:

"The said East Ridgelawn Cemetery shall first deduct from the proceeds of sale of said lots or plots such sum as the said East Ridgelawn Cemetery shall deem necessary to set aside for the perpetual care fund which sum however shall not be less than six cents per square foot of land sold for burial purposes said perpetual care fund shall be paid over by the East Ridgelawn Cemetery to the Passaic Trust and Safe Deposit Company and shall be invested together with income therefrom by the said Passaic Trust and Safe Deposit Company one-half of the balance of the proceeds of the sale of said lots and plots shall be paid by the East Ridgelawn Cemetery to the Passaic Trust and Safe Deposit Company and out of the remainder of the proceeds of said sales the said East Ridgelawn Cemetery shall pay to the said Passaic Trust and Safe Deposit Company as the further consideration for such conveyances all moneys remaining after the deduction of the expenses of preserving and improving

and embellishing the said Cemetery grounds and Avenues and roads leading thereto and for buildings thereon and the debts contracted for said Cemetery and for salaries wages and expenses incurred by the said Cemetery in carrying on its business and such an amount in addition thereto as the said Cemetery may deem proper to retain from time to time for the future embellishing of said Cemetery, it however being understood that the way in which said money shall be expended shall be entirely under the control of said Cemetery Company the Trust Company being in no manner liable therefore. The proceeds of said sale herein referred to shall be paid over to the said Trust Company, its successors or assigns monthly.

"(3) That the price for the sub-lots or plots in said Cemetery shall be fixed by the Cemetery.

"(4) That said proceeds of sale of said sub-lots or plots is hereby appropriated and is to be divided by said Cemetery into Thirteen Thousand five hundred (13,500) shares to represent which the said East Ridgelawn Cemetery shall issue a certificate or certificates to the said Trust Company in such form as shall be hereinafter recited.

"(5) That the said certificates when issued and delivered as herein provided shall be negotiable and assignable by the holder thereof his executors administrators successors or assigns and on the surrender up or cancellation of any certificates first issued under this agreement new certificates in place thereof shall be issued by said East Ridgelawn Cemetery to the person lawfully entitled to receive the same and the same shall be endorsed as hereinafter provided by the said Trust Company, its successors or assigns.

"(6) That the said East Ridgelawn Cemetery shall convey by its deed to Adam Frank, William H. Bonynge and Charles M. Howe at the execution of this agreement twelve hundred (1200) sub-lots or plots in said Cemetery as may be designated by them so that the said persons receiving such deed or their successors shall be qualified voters in the said Cemetery and will be able to control and manage the business and affairs of the said Cemetery provided that if any of the sub-lots or plots so conveyed to any such persons shall thereafter be sold to a bona fide purchaser by the said Cemetery the said grantees having the deed for said lots shall re-convey the lots so sold as the said Cemetery may request and accept in exchange therefor from the said Cemetery other lots and the proceeds derived from any such sale of sub-lots or plots shall be disposed of in the manner hereinbefore directed in the event of the death of the said Adam Frank his successor shall be selected and appointed by his legal representative.

"In the event of the death resignation or removal of either of the other voting trustees his successor shall be selected and appointed by said Adam Frank or his legal representatives from the Board of Trustees, subject however to the approval of the Board of Trustees.

"(7) That in case the said Cemetery shall make default in the performance of any of the duties and obligations on its part hereunder created and should fail or neglect or refuse to comply with the request of the said Trust Company its successors or assigns concerning the different matters provided in this agreement the said Trust Company its successors or assigns shall at the request in writing of fifty per centum of holders of shares actually issued have the right and power on behalf of and as the representative of the said share holders who may own such certificates as above mentioned to take such proceedings as it may be advised as proper to take and sequester the rents issues profits

incomes and revenues derived from the sale of lots and other sources by said Cemetery and may sequester the same for the purpose of compelling the said Cemetery to perform the conditions contained in this agreement and herein mentioned and shall continue to sequester the same until the said Cemetery complies with the said requests of the said Trust Company its successors or assigns.

"(8) That the said East Ridgelawn Cemetery on being requested in writing by sixty per centum of the said share holders will give its consent to the substitution of any other Trust Company mentioned in said request as a successor or assign of the Trust Company herein named which said Trust Company after being so substituted shall have the same rights and powers and have the same relations to the said East Ridgelawn Cemetery as the present Trust Company herein named.

"(9) That the form of certificate to be issued by the said East Ridgelawn Cemetery shall be as follows:

" 'Certificate of shares of proceeds of sale of The East and West Ridgelawn Cemeteries, Bodies corporate of The State of New Jersey.

" 'This is to certify that is the registered holder of shares of proceeds of the sale by these Companies of sub-lots or plots in the hands of said corporations after deducting certain expenses charges and disbursements provided for in the deed by which the said lands were conveyed to the said corporations by the Passaic Trust and Safe Deposit Company transferable only on the books of the Companies by the holder hereof in person or by duly authorized attorney upon surrender of this certificate properly endorsed. This certificate is part of an issue of shares amounting in the whole to Thirteen Thousand five hundred (13,500) shares. The holder of this certificate is entitled to receive his pro rata share of such proceeds of sale from time to time as provided in said agreement above mentioned.

" 'Witness the seal of the companies and the signature of their Presidents and Treasurers this. day of nineteen hundred and

" 'East Ridgelawn Cemetery
President.
Treasurer
" 'West Ridgelawn Cemetery
President.
Treasurer'

"(10) That the said Cemetery Company at the time of paying over the said proceeds of sale of said sublots or plots shall render to the said Trust Company monthly statements of its receipts and disbursements together with vouchers and bills for the same that the account can be audited by the said Trust Company its successors or assigns and the said Trust Company shall have access to the books of the said Cemetery Company at all reasonable times for the purpose of auditing the statements so rendered and in case any irregularities are discovered the said Cemetery Company shall take steps to correct the same and the person at fault shall be discharged or removed from office by the said Cemetery Company if the said Trust Company so orders.

"(11) That the said East Ridgelawn Cemetery shall pay to the said Passaic Trust and Safe Deposit Company its successors or assigns for any services rendered under this agreement such compensation as may from time to time be agreed upon between them and the moneys to be paid by the said Cemetery may be charged as a part of the incidental expenses of its business. Second, that the said Passaic Trust and Safe Deposit Company on receiving said certificates from the said Cemetery Company shall assign

and transfer the same to such person or corporation for such number of shares as the grantor in said deed to said Trust Company shall request in writing signed by him and shall make a certificate on the back thereof in the following form.

" 'We do hereby certify that the within certificate has been duly issued in pursuance to the conditions contained in a deed made by this Trust Company to the East Ridgelawn Cemetery bearing date of day of . Nineteen hundred and

" 'Sgd        Trust Company
        By                    ,

"That in making said endorsement the said Trust Company incurs no liability to the holder.

"Third, that the said Trust Company shall keep a record of the certificates so issued in a book to be provided for the purpose and shall from time to time as it may be requested endorse any new certificates to take the place of old ones assigned and surrendered up for cancellation.

"Fourth, that the said Trust Company shall at the end of every three months providing the said Trust Company shall have in its possession a sum sufficient to pay a dividend of at least fifty cents per share on all shares actually issued and outstanding pay over to the holders of certificates such proportion of the moneys in its hands from such proceeds of sale as aforesaid as the number of shares held by each bears to the whole number of shares issued by the said East Ridgelawn Cemetery each share to take its pro rata part of the same.

"Fifth, that the said Passaic Trust and Safe Deposit Company shall at any time hereafter on being requested in writing by sixty per centum of the holders of said certificates issued and outstanding convey assign transfer and set over to any other Trust Company named in such request all the rights powers and interest which it has in the said East Ridgelawn Cemetery under said deed given by it to the said Cemetery and which was reserved to it in said deed and shall consent to the substitution for itself and in its place and stead of the said Trust Company named in such request on being fully paid and satisfied of all moneys due and owing to it under this declaration of trust and under the said deed provided however that any and all indebtedness of every kind and nature which may be owing said Trust Company by the said East Ridgelawn Cemetery shall be first fully paid and satisfied."

4. By deed dated January 3, 1907, (Exhibit E-R-6 of Sept. 13, 1955) recorded in the Register's office aforesaid, in Book P-18 of Deeds, page 657, the Passaic Trust and Safe Deposit Company conveyed to East Ridgelawn Cemetery the lands described in the Gruber deed aforesaid, to have and to hold upon conditions which the grantee, East Ridgelawn Cemetery, expressly covenanted, as follows:

(1) That the lands would be used by the grantee for cemetery purposes only.

(2) That the grantee, its successors and assigns would pay, as consideration for the land conveyed, such sum as it might receive from time to time as proceeds of sale by said grantee of all lots or plots in the tract, as follows:

"(a) Setting aside not less than six cents per square foot of lands sold for burial purposes as a perpetual care fund to be paid over to and invested by grantor, together with income therefrom;

"(b) Paying over one-half of balance of proceeds of sale of said lots and plots to grantor;

"(c) Paying to grantor so much of the balance of proceeds of sale of said lots or plots as may remain after deduction by grantor of "expenses of preserving, improving and embellishing of said cemetery

grounds and avenues and roads leading thereto and for buildings thereon, and the debts contracted for such cemetery, and for salaries, wages and expenses incurred by the said grantee in carrying on its business; and such an amount in addition thereto as the said grantee may deem proper to retain from time to time for the further embellishing of said cemetery."

5. By deed dated December 21, 1906 (Exhibit E-R-7 of Sept. 13, 1955), recorded in said Register's office in Book H-19 of Deeds at page 468, the said Gruber conveyed in fee to the said Trust Company, other tracts of land in the same Township and County, aggregating in excess of 90 acres.

6. By written Declaration of Trust, dated December 21, 1906 (Exhibit E-R-8 of Sept. 13, 1955), recorded in said Register's office in Book H-19 of Deeds at page 472, the said Trust Company, after reciting the aforesaid deed to said trustor from Gruber (Exhibit E-R-7 of Sept. 13, 1955), acknowledged that said Trust Company held the premises described in said Gruber deed, in trust, to convey the lands and premises conveyed to it by Gruber, upon his written request, to West Ridgelawn Cemetery, a New Jersey corporation, upon the conditions in all respects similar to those set forth in the hereinabove recited Declaration of Trust for East Ridgelawn Cemetery (Exhibit E-R-5 of Sept. 13, 1955) except that the undertakings respecting payments to the trustor are set forth as those of West Ridgelawn Cemetery.

7. By deed dated January 3, 1907 (Exhibit E-R-9 of Sept. 13, 1955) recorded in said Register's office in Book H-19 of Deeds at page 482, the said Trust Company conveyed to West Ridgelawn Cemetery the lands and premises described in the Declaration of Trust last aforesaid and the grantee, West Ridgelawn Cemetery, expressly covenanted in accordance with the obligations which the trustor undertook, in its Declaration of Trust, to impose upon said grantee.

8. Certificates of shares in the proceeds of sale of burial plots or lots in both cemeteries, in form as set forth in the deed from the Trust Company to each cemetery, and in the related Declaration of Trust by the Trust Company, were issued in behalf of each cemetery, to a total of 13,500 shares, after the aforesaid conveyances to the cemeteries and the aforesaid Declarations of Trust became operative.

9. The lands conveyed to West Ridgelawn Cemetery are physically separated from those conveyed to East Ridgelawn Cemetery by a public street or highway, and those conveyed to East Ridgelawn Cemetery are more suited for cemetery purposes by reason of elevation, topography, etc., than those conveyed to West Ridgelawn Cemetery. East Ridgelawn Cemetery was first developed for cemetery purposes.

10. Both East Ridgelawn Cemetery and West Ridgelawn Cemetery, and their respective operations and assets, have been completely separate in all respects since the year 1912 and there has been no commingling of funds or assets, or joint management of the respective cemeteries, since the latter date. The perpetual care fund of East Ridgelawn Cemetery, created out of the proceeds of sale of burial plots or lots therein, is presently intact.

11. In East Ridgelawn Cemetery Co. v. Frank, 1910, 77 N.J.Eq. 36, 75 A. 1006, the Court of Chancery of New Jersey adjudicated that the certificates of shares in the proceeds of sale of burial plots or lots in both East Ridgelawn Cemetery and West Ridgelawn Cemetery, issued jointly by both cemeteries, are *ultra vires*, contra public policy and confer no legal right in holders thereof.

12. In Atlas Fence Co. v. West Ridgelawn Cemetery, 1936, 119 N.J.Eq. 552, 182 A. 902, the Court of Errors and Appeals of New Jersey affirmed the Court of Chancery of that State in adjudicating, with respect to West Ridgelawn Cemetery, that the direct beneficiary of the perpetual care fund of West Ridge-

lawn Cemetery was that cemetery association; that the provisions of the trust agreement for a dividend fund were void (for the reasons stated in East Ridgelawn Cemetery Co. v. Frank, supra; and that the trustee (Passaic Trust and Safe Deposit Company, now Passaic National Bank and Trust Company) was entitled to receive the fair value of the estate conveyed to West Ridgelawn Cemetery as of the time of the conveyance, with interest; and that the certificate holders had lost their right to a vendor's lien upon the lands of said Cemetery.

13. In Mack v. Passaic National Bank & Trust Co., 1945, 150 F.2d 474, 477, the United States Court of Appeals for the Third Circuit held that Kurzrok was entitled to intervene in this action, pursuant to Rule 24(a) (2) of the Rules of Civil Procedure, 28 U.S.C., as a lot owner of West Ridgelawn Cemetery, because such lot owners "are not and cannot be represented adequately by the certificate holders." (See supplemental opinion of the same Court in 1946, 154 F.2d 907.) On the appeal which evoked the Mandate pursuant to which these findings are made, Mack v. Passaic National Bank & Trust Co., 3 Cir., 1955, 221 F.2d 441, Kurzrok still appeared only as a lot owner in West Ridgelawn Cemetery.

14. In Passaic National Bank & Trust Co. v. East Ridgelawn Cemetery, 1946, 137 N.J.Eq. 603, 606, 45 A.2d 814, and 139 N.J.Eq. 488, 51 A.2d 869, the then New Jersey Court of Errors and Appeals held that the provisions of the deeds and Declarations of Trust aforesaid, for the payment to holders of the certificates of moneys out of the proceeds of sale of burial lots or plots in either of the two cemeteries, were utterly invalid, in contravention of law, and, therefore, void.

15. Ernest Kurzrok, claiming to be an owner of a burial lot in West Ridgelawn Cemetery, was, by order of this Court filed in this action on October 31, 1945, permitted to intervene therein for the sole purpose of protecting his rights as a *lot* owner of *West* Ridgelawn Cemetery and the rights of all other lot owners of West Ridgelawn Cemetery who might join in this action. By order made and filed in this action on October 26, 1953, Walter G. Winne, as surviving successor trustee, was directed to note on his records the claims of said Kurzrok that he is the holder of Certificate No. 449 for ten shares of proceeds of sale of lots by the "East and West Ridgelawn Cemeteries" endorsed to said Kurzrok by Adam Frank on February 5, 1929. By order of this Court, made and filed in this action on July 25, 1955, the said Kurzrok was permitted to withdraw as a party plaintiff in this action, and Samuel F. Slaff was substituted as a plaintiff-intervenor in behalf of lot owners in West Ridgelawn Cemetery, in the place and stead of said Kurzrok.

16. Plaintiffs in this action seek relief as Executrices of Clara B. Prince, deceased, alleged owner of certificate or certificates for 66 shares. By order filed herein on July 19, 1943, Samuel F. Slaff was permitted to intervene in this action upon an assertion of ownership of certificate No. 668, representing 158 shares. By order filed herein on July 9, 1943, Kay Holding Company, Inc. was permitted to intervene as alleged holder of certificate No. 525 for 200 shares. By order of November 4, 1944, Adam Frank, as executor and trustee of the estate of Estelle I. Frank, deceased, was permitted to intervene in this action as alleged holder of certificate or certificates for 2,500 shares. By order filed herein on September 10, 1945, H. Jerome Sisselman was permitted to intervene in this action as alleged owner of certificate or certificates for 25 shares.

17. In East Ridgelawn Cemetery v. Winne, 1953, 11 N.J. 459, 94 A.2d 833, to which were joined as parties defendant Adam Frank as executor and trustee as aforesaid, Sisselman, Kay Holding Company, Inc., Slaff, Mack and Elias as executrices of Prince, deceased, and other holders on behalf of themselves and all other holders of such certificates, as representing the holders of all certificates

outstanding, the Supreme Court of New Jersey affirmed the Appellate Division of the Superior Court of that State 1952, 19 N.J.Super. 413, 88 A.2d 635, in holding that the surviving substituted trustee for certificate holders appointed by this Court, was entitled to recover from East Ridgelawn Cemetery $50,505 which East Ridgelawn Cemetery realized from the sale of 2,500 of the shares, plus $73,380 representing the value of the land at the time of its conveyance to East Ridgelawn Cemetery, plus interest on the latter sum at three percent from January 3, 1907, the date of said conveyance.

18. By order of this Court filed October 4, 1954, there was authorized the execution and performance of an agreement dated September 7, 1954, between East Ridgelawn Cemetery and said surviving trustee, for holders of certificates for proceeds of sale of lots and plots of East and West Ridgelawn Cemeteries, for the sale of 34.389 acres of unimproved land of said cemetery for the purpose of satisfying the judgment recovered by said trustee against said cemetery as affirmed by the New Jersey Supreme Court. 11 N.J. 459, 94 A.2d 833. The said agreement recited that East Ridgelawn Cemetery was indebted to said certificate holders in the amount of $162,200. The order last aforesaid conditioned its authorization to said trustee upon his securing the approval of the agreement by the Superior Court of New Jersey. It was upon Kurzrok's appeal from this order that the Mandate of the Court of Appeals, under which this decision is rendered, issued.

18a. Pursuant to the said Order of October 4, 1954, and prior to the filing of the said Notice of Appeal by said Ernest Kurzrok, Walter J. Winne, substituted trustee, on October 7, 1954, signed the aforesaid agreement.

18b. Pending the aforesaid appeal from the aforesaid Order of October 4, 1954, the Superior Court of New Jersey, Chancery Division, by Order dated December 17, 1954, approved the said agreement.

19. On September 7, 1955, there was filed in the office of the Clerk of this Court, in this action, an unsigned and unverified petition of one Harry Dowret, of Elmont, New York, together with an unsigned notice of motion in behalf of said Harry Dowret, for leave to intervene in this action as a plaintiff-intervenor, claiming that he is a plot owner in West Ridgelawn Cemetery.

20. In a written agreement dated November 6, 1926, between "King Solomon Cemetery (West Ridgelawn Cemetery)" and Harry Dowret, it is recited that the cemetery sold to Dowret a lot twenty by thirty-two feet in the Beth El Section for $500. A copy of this agreement was marked Exhibit No. HD-1 in evidence on the hearing of September 13, 1955. Further, by the terms of said agreement, Dowret (who testified that he then was and still is in the cemetery monument business), undertook to place memorial monuments at various locations to be designated by the cemetery, upon cemetery lands, including the lot purchased by Dowret, and in the latter respect without any regard to actual burial use. The buyer was further given the right to remove the stones on sale thereof to any other part of the cemetery and to sell these monuments to other lot owners therein. It was further agreed that the cemetery should receive twelve and one-half percent on all sales of monuments, exclusive of foundations, sold by Dowret to other lot owners in the cemetery and that the buyer should receive "a cut of ten (10¢) cents per cubic foot" from the regular price on all foundations ordered by him for his monuments. This agreement further provided that in the event of its termination prior to expressed maturity, either by cemetery's act or by mutual agreement, the cemetery should take over the monuments at their reasonable wholesale market value to be determined, in the event of disagreement, by arbitration. Dowret testified, on the hearing of September 13, 1955, that he displayed the monuments in the cemetery with the object of securing business and that he paid the $500 consideration re-

cited in the agreement, at or about the time of the date of the agreement, by check on Public National Bank of New York City, East Side Branch, payable to the order of Adam Frank. He also testified that he received a deed for two plots in the cemetery, but that it had been lost. Ernest Kurzrok testified, as a witness for Dowret, that the $500 consideration aforesaid was paid, and that Dowret received a deed for two plots in the Beth El Section of West Ridgelawn Cemetery. Mr. Kurzrok further testified, however, that the Braverman (accountants') report (Exhibit HD-3 of September 13, 1955) failed to disclose a receipt of the $500, either by Frank or by West Ridgelawn Cemetery, although Dowret's plot is indicated on maps marked Exhibits HD-2 and HD-4 of the same date. The former map bears date July, 1931. The said Braverman report, however, does list an item of cash received from H. Dowret on September 27, 1928, in the amount of $10.80. The report moreover, which covers the period from August 1, 1923 to May 31, 1929 inclusive, reveals consolidated cash receipts charged to the respective accounts of West Ridgelawn Cemetery and Adam Frank, attorney, totalling $137,857.96, of which $86,025.40 were from lot and plot owners in West Ridgelawn Cemetery and $33,537.36 were from sources listed in the report as unknown. Since the hearing of September 13, 1955, the Court has been furnished by Ernest Kurzrok, with a certified copy of a certificate filed in the office of the Clerk of Passaic County, New Jersey, on April 27, 1939, setting forth the name "H. Dowret" as among the trustees and officers of West Ridgelawn Cemetery, following their annual election on April 17, 1939. N.J.R.S. 8:1-6, N.J.S.A., provides that the care and management of all cemetery associations incorporated (as was West Ridgelawn Cemetery) shall be confided to a board of trustees to consist of not less than three nor more than fifteen members, who shall be plot or lot holders in the association. Section 8:1-11 of the same Statutes requires such cemetery association to file, in the office of the Clerk of the County wherein it is located, a certificate setting forth the names of its trustees and officers, within ten days after the annual election thereof.

21. In Atlas Fence Co. v. West Ridgelawn Cemetery (to which Ernest Kurzrok was a party) 1936, 120 N.J.Eq. 239, 184 A. 638, affirmed 1936, 120 N.J.Eq. 615, 187 A. 366, the Court of Chancery of New Jersey was affirmed by the Court of Errors and Appeals in authorizing the Receiver, appointed by said Court of Chancery for West Ridgelawn Cemetery, to accept the bid or offer of one Aaron Sacks for conveyance by the Receiver of fourteen and one-half acres of land of said cemetery, dedicated for cemetery purposes and to be used for nonsectarian burials, subject to the rules and regulations then or thereafter in effect governing said cemetery, for the sum of $35,000; the bidder agreeing to expend for the improvement of said lands a certain amount of money, and to the retention from the sale of all lots the sum of six cents per square foot for the perpetual care fund to be used for the perpetual care of said fourteen and one-half acres, and to be turned over to the trustee or its successor.

22. H. Jerome Sisselman testified at the hearing of September 13, 1955 that he is and has been, since 1940, Secretary and Treasurer of West Ridgelawn Cemetery, and as such, in charge of all of its books and records. He further testified that these records fail to indicate that Dowret owns or has any interest in any lot or plot in West Ridgelawn Cemetery; and that included in the lands of said Cemetery which were sold by the Receiver thereof, pursuant to order of the Court of Chancery last aforesaid, was the property claimed by Dowret. Mr. Sisselman further testified that the perpetual care fund of West Ridgelawn Cemetery, composed of six cents per square foot of lands sold for burial purposes, neither now has nor ever had any connection with any similar fund of East Ridgelawn Cemetery.

## Conclusions

Upon the foregoing findings, the Court concludes as follows:

■ 1. No person, association, or corporation having an interest in *West* Ridgelawn Cemetery, or in its property, or in the moneys, if any, constituting a fund for the perpetual care of burial plots or lots therein, has any right, title or interest in *East* Ridgelawn Cemetery, or in its property, or in the moneys, if any, constituting a fund for the perpetual care of burial plots or lots therein.

2. Neither Ernest Kurzrok, nor Samuel F. Slaff as his successor, as an owner of a burial plot or lot in West Ridgelawn Cemetery, has any right, title or interest, either individually, or as a representative of any owner or owners of plots or lots in said Cemetery, in any land of East Ridgelawn Cemetery, nor in the proceeds of sale of any burial plots or lots therein, nor in any fund for the perpetual care of any such burial lots or plots in East Ridgelawn Cemetery.

3. Neither said Kurzrok nor said Slaff, by virtue of ownership of certificates, if any, issued by either or both of said Cemeteries, has any right, title or interest in the lands of East Ridgelawn Cemetery.

4. While petitioner Dowret was a plot or lot owner in West Ridgelawn Cemetery on April 17, 1939, there is insufficient evidence to enable this Court to determine whether he is still a plot or lot owner in said cemetery; but, whether or not he is still such plot or lot owner, he is not entitled to intervene in this action because he has no right, title or interest in the perpetual care fund, if any, established for West Ridgelawn Cemetery, nor in the proceeds of sale of the lands of East Ridgelawn Cemetery.

■ 5. Neither Samuel F. Slaff, as successor to Ernest Kurzrok, by virtue of ownership of any of the certificates of shares of proceeds of burial lots or plots, issued by East Ridgelawn Cemetery and West Ridgelawn Cemetery, nor any other holder of any such certificate, has any right, title or interest in either of the perpetual care funds aforesaid nor in the lands of either of such cemeteries.

6. Decision upon remaining issues in this action is deferred pending compliance by the surviving substituted trustee with the terms of an agreement signed by him on October 7, 1954, which agreement is hereby approved and affirmed.

An order may be submitted in accordance with the foregoing conclusions.